**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**December 28, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

ALEXANDER HOOD, on behalf of
himself and all similarly situated persons,

    Plaintiff - Appellant,

v.

AMERICAN AUTO CARE, LLC, a
Florida limited liability company;
BEACON FINANCIAL SOLUTIONS,
LLC, a Florida limited liability company;
JESSIE BRITT, an individual; KYLIE
BRITT, an individual; DAVID
GLENWINKEL, an individual; ROYAL
ADMINISTRATION SERVICES, INC., a
Florida corporation; CARGUARD
ADMINISTRATION INC., a Kansas
corporation; MATRIX WARRANTY
SOLUTIONS, INC., a Nevada corporation,
d/b/a Element Protection Plans; EGV
COMPANIES, INC., a Delaware
corporation, d/b/a Omega Auto Care,

    Defendants - Appellees.

No. 20-1157

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:18-CV-02807-PAB-SKC)**
_____

Jennifer Bennett (Neil K. Sawhney with her on the briefs), Gupta Wessler PLLC, San
Francisco, California, for the Appellant.

John L. Skari Jr., Hassan + Cables, LLC, Boulder, Colorado (Brian E. McGovern,
McCarthy Leonard & Kaemmerer, L.C., Town & Country, Missouri; Jeff Whitfield,

Caitlyn Hubbard, Kelly Hart & Hallman LLP, Fort Worth, Texas, with him on the brief) for Appellees.

_____

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

American Auto Care (AAC), a Florida limited liability company whose sole office is in Florida, sells vehicle service contracts that provide vehicle owners with extended warranties after the manufacturer's warranty expires. Alexander Hood, a Colorado resident, appeals the dismissal for lack of personal jurisdiction of his putative class-action claim against AAC in the United States District Court for the District of Colorado.[1] We reverse, following the Supreme Court's recent decision in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), which was handed down after the district-court judgment.

## I.    BACKGROUND

Mr. Hood's complaint alleges that AAC violated the Telephone Consumer Protection Act (TCPA) and invaded Mr. Hood's and the putative class members' privacy by directing unwanted automated calls to their cell phones without consent.

_____

[1] AAC is wholly owned by Beacon Financial Services, LLC (BFS), whose owners are residents of Florida and California. Mr. Hood's complaint names several defendants besides AAC, including BFS and its owners and four corporations (none a citizen of Colorado) that provide the vehicle service contracts sold by AAC. The only issue before us is jurisdiction over AAC, which the district court concluded was improper, therefore also foreclosing jurisdiction over the other defendants, for which personal jurisdiction was derivative of personal jurisdiction over AAC.

2

*See* 47 U.S.C. § 227(b)(1)(A)(iii) ("It shall be unlawful for any person within the United States . . . to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ."); *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020) (the TCPA protects consumers from "nuisance and privacy invasion" by prohibiting "almost all robocalls to cell phones" (internal quotation marks omitted)).

Shortly after purchasing a used car, Mr. Hood began receiving prerecorded calls to his cell phone claiming that his car warranty was about to expire and offering to sell him an extended warranty. Although he was then residing in Colorado, the calls came from numbers with a Vermont area code. He had previously lived in Vermont, and his cell phone number had a Vermont area code. Mr. Hood was able to trace one such call to AAC. The complaint alleges that AAC "use[s] telemarketing to sell vehicle service contracts . . . nationwide, including in Colorado by calling Colorado phone numbers." Aplt. App. at 19.

Several defendants moved to dismiss the case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). After reviewing the complaint and the parties' arguments and affidavits, the district court granted the motions. Although it determined that Mr. Hood had alleged sufficient facts to establish that AAC purposefully directs telemarketing at Colorado, it held that the call to Mr. Hood's Vermont phone number did not arise out of, or relate to, AAC's calls to Colorado phone numbers. In light of *Ford*, however, the dismissal cannot stand. So long as

AAC's marketing in Colorado was essentially the same as its marketing in Vermont, the telemarketing calls to Mr. Hood related to AAC's marketing in Colorado.

## II.     DISCUSSION

"When, as here, personal jurisdiction is found wanting on the basis of the complaint and affidavits, our review of the district court's dismissal is de novo, taking as true all [well-pleaded] . . . facts alleged in plaintiffs' complaint." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted). At this stage of litigation, plaintiffs need only make a prima facie showing of personal jurisdiction. *See id.* We resolve in the plaintiff's favor any factual disputes arising from the complaint and the parties' affidavits. *See id.*

Personal jurisdiction over nonresident defendants is proper if an applicable statute authorizes service of process and if the exercise of jurisdiction comports with constitutional due process. *See id.* As the parties agree, the TCPA does not address service of process but the Federal Rules of Civil Procedure incorporate the Colorado long-arm statute, *see* Fed. R. Civ. P. 4(k)(1)(A) (service of process establishes personal jurisdiction in federal courts over defendants "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"), which confers personal jurisdiction to the extent permitted by the United States Constitution, *see Dudnikov*, 514 F.3d at 1070. Thus, the statutory and constitutional requirements merge and we must assess only whether Colorado jurisdiction over this claim would be consistent with due process. *See id.*

The Fourteenth Amendment's Due Process Clause limits the jurisdiction of a state court over a nonresident defendant by requiring that it have "certain minimum contacts" with the forum State to assure "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Put another way, the contacts with the forum State must be sufficient to "make it reasonable, in the context of our federal system of government, to require the [defendant] to defend the particular suit which is brought there." *Id.* at 317.

The Supreme Court has distinguished between two types of personal jurisdiction: general and specific. *See Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). A state court can exercise general jurisdiction over any claims against defendants who are "essentially at home" there, *id.* at 127 (internal quotation marks omitted), as when an individual is domiciled in the State or a corporation is incorporated or has its principal place of business there, *see Ford*, 141 S. Ct. at 1024. The parties agree that general jurisdiction in Colorado is not at issue because AAC is a Florida company. But specific jurisdiction is proper if there is "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017) (brackets and internal quotation marks omitted).

The requirements for specific jurisdiction "derive from and reflect two sets of values—treating defendants fairly and protecting 'interstate federalism,'" which is

5

the component of federalism doctrine that concerns the relative powers of the several States. *Ford*, 141 S. Ct. at 1025 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)). First, fairness to defendants requires that a State exercise jurisdiction over a company only if the company "exercises the privilege of conducting activities within a state—thus enjoying the benefits and protection of its laws." *Id.* (brackets and internal quotation marks omitted). The contours of the doctrine promote fairness by "provid[ing] [a] defendant[] with fair warning— knowledge that a particular activity may subject it to the jurisdiction of a foreign sovereign," *id.* (original brackets and internal quotation marks omitted), so it can take protective measures, such as charging more to customers in a State, procuring insurance, or avoiding certain activities in a State, *see World-Wide Volkswagen Corp.,* 444 U.S. at 297). Second, principles of interstate federalism, which recognize that "[t]he sovereignty of each State implies a limitation on the sovereignty of all its sister States," protect defendants from "the coercive power of a State that may have little legitimate interest in the claims in question." *Bristol-Myers Squibb*, 137 S. Ct. at 1780–81 (ellipsis, original brackets, and internal quotation marks omitted).

To determine when specific jurisdiction is properly exercised, courts are to assess two requirements: (1) that the defendant has "purposefully directed [its] activities at residents of the forum," and (2) that the suit "arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal

quotation marks omitted); *see Bristol-Myers*, 137 S. Ct. at 1780.[2] But even when both

requirements are satisfied, the Supreme Court has indicated that the defendant can

still escape jurisdiction by establishing that it would be incompatible with traditional

notions of fair play and substantial justice. *See Burger King* 471 U.S. at 476–77

(noting that a defendant "must present a compelling case that the presence of some

other considerations would render jurisdiction unreasonable").

AAC argues (1) that purposeful direction must be shown by suit-related

contacts—so its calls to Colorado residents at Colorado phone numbers cannot

support personal jurisdiction for Mr. Hood's claim based on a call to a Vermont

phone number; (2) that the second requirement contemplates a causal connection

between a defendant's forum contacts and the suit—but its calls to Colorado phone

numbers did not give rise to its call to Mr. Hood's Vermont phone number; and (3)

that subjecting it to burdensome litigation in Colorado, where its contacts are weak,

would violate traditional notions of fair play and substantial justice.

---

[2] The first requirement is also commonly formulated as the defendant must have "availed [itself] of the privilege of conducting business" in the forum. *Burger King*, 471 U.S. at 476. Both formulations are intended to capture the same concept, although the context may suggest the advantage of one formulation or the other in advancing the analysis. *See, e.g., Dudnikov*, 514 F.3d at 1071 ("In the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state."). Both share the "aim of . . . ensur[ing] that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state." *Id.* (internal quotation marks omitted); *see also Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 n.11 (10th Cir. 2017).

Each argument fails. The argument regarding "purposeful direction"—the first requirement—is implicitly rejected by *Ford*, and the argument regarding "arise out of or relate to"— the second requirement—is explicitly rejected. For ease of exposition, we begin by discussing the second requirement. We also determine that AAC has not shown a violation of traditional notions of fair play and substantial justice.

### A.    Relationship Between the Claim and Forum Contacts

The test for satisfying the second requirement is whether the plaintiff's claims "arise out of or relate to . . . activities" that the defendant purposefully directed at residents of the forum. *Burger King*, 471 U.S. at 472 (internal quotation marks omitted). AAC interprets that language as requiring a causal connection between the plaintiff's claims and the defendant's activities purposefully directed at forum residents. The district court agreed. Although it found that AAC purposefully directed telemarketing at Colorado residents, it concluded that there was "an insufficient connection between the forum and the underlying controversy—a phone call to a Vermont area code—to allow the Court to exercise specific jurisdiction here." Order at 8 (internal quotation marks omitted).

We need not decide whether the district court's analysis would have been correct under the law established at the time of its judgment. What we can say is that after that judgment the Supreme Court made clear that a causal connection is not required. *Ford* considered two similar lawsuits in Montana and Minnesota. One suit alleged that a Montana resident was killed near her home as the result of a malfunction in the Ford she was driving. *See Ford*, 141 S. Ct. at 1023. The other

8

alleged that a Minnesota resident was badly injured because of a Ford defect while a passenger on a trip in Minnesota. *See id.* Ford argued that because neither vehicle was designed, manufactured, or first sold in the State where the accident occurred, Ford was not subject to specific jurisdiction in either forum State. *See id.* at 1026. It acknowledged that it purposefully availed itself of both markets through extensive advertising and (through its dealerships) maintaining, repairing, and selling vehicles—including the models at issue. *See id.* at 1026, 1028. But it contended that the plaintiffs' claims did not arise out of or relate to those activities because the *specific* cars involved were not first sold there, having entered the forum States only after resale or an owner's relocation. *See id.* at 1022–23. It insisted that "[j]urisdiction attaches only if the defendant's forum conduct *gave rise* to the plaintiff's claims." *Id.* at 1026 (internal quotation marks omitted).

Although the Supreme Court agreed that "arise out of" is a causal test, it distinguished that language from the "relate to" component of the second requirement. It explained:

> None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. . . . [O]ur most common formulation of the rule demands that the suit "arise out of *or relate to* the defendant's contacts with the forum." The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum.

*Id.* at 1026 (citations omitted). The Court refrained from elaborating further on relatedness. But *Ford* said enough for our purposes.

The Court noted that it had repeatedly endorsed in dicta the proposition that specific jurisdiction arises when a defendant "serves a market for a product in the forum State and the product malfunctions there." *Id.* at 1027. The proposition was first expressed in *World-Wide Volkswagen*. Two New York residents purchased a car in New York and had an accident while driving through Oklahoma on their way to their new home in Arizona. *See World-Wide Volkswagen*, 444 U.S. at 288. They filed suit in Oklahoma against the manufacturer, importer, regional distributor, and retailer. *See id.* The distributor and retailer challenged jurisdiction because they did business exclusively in the New York metropolitan area and never sold any cars in Oklahoma. *See id.* at 288–89. The Court held that there was no basis for Oklahoma jurisdiction over the retailer and distributor, but it was careful to distinguish the manufacturer, which *was* subject to specific jurisdiction in Oklahoma:

> [I]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, *but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States*, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

*Id.* at 297 (emphasis added). Or, as *Ford* restated the proposition: "[I]f Audi and Volkswagen's business deliberately extended into Oklahoma (among other States), then Oklahoma's courts could hold the companies accountable for a car's catching fire there—even though the vehicle had been designed and made overseas and sold in New York." *Ford,* 141 S. Ct. at 1027; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011) (quoting above *World-Wide Volkswagen*

passage to support the proposition that the "[f]low of a manufacturer's products into the forum . . . may bolster an affiliation germane to *specific* jurisdiction" when the product causes injury there); *Daimler*, 571 U.S. at 127 n.5 (similar).

In keeping with this longstanding view, the *Ford* Court held that there was a "strong relationship" between Ford, the forum States, and the accidents there because evidence of advertising, sales, and service showed that for many years Ford had "systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States." *Ford*, 141 S. Ct. at 1028 (internal quotation marks omitted). We understand *Ford* to adopt the proposition that the forum State can exercise personal jurisdiction over an out-of-state defendant that has injured a resident plaintiff in the forum State if (1) the defendant has purposefully directed activity to market a product or service at residents of the forum State and (2) the plaintiff's claim arises from essentially the same type of activity, even if the activity that gave rise to the claim was not directed at forum residents. In that circumstance, we say that the activity giving rise to the claim "relates" to the defendant's activity in the forum State. *See id.* at 1028–29 & n.5.

Applying that proposition here, we conclude that Colorado can exercise jurisdiction over Mr. Hood's claim against AAC. Even if AAC's call to Mr. Hood was not a direct result of its telemarketing efforts directed at Colorado,[3] Mr. Hood

_____

[3] We are assuming that AAC's call to Mr. Hood was a direct result of its efforts to call a resident of Vermont, not Colorado. But on the present record it is

was still injured there by activity essentially identical to activity that AAC directs at

Colorado residents. If AAC places telemarketing calls to sell service contracts to

Vermont and Colorado residents alike, it does not matter that they called Mr. Hood

from a list of apparent Vermont residents rather than a list of apparent Colorado

residents. We might not apply that proposition if there was a substantial relevant

difference between calls placed to residents of the two states.[4] *See id.* at 1028

("Contrast a case, which we do not address, in which Ford marketed the models in

only a different State or region."). But here Mr. Hood alleged that other Colorado

residents received the same type of solicitation call that he did.

This result is consistent with the due-process values reflected in specific-

jurisdiction doctrine. *See id.* at 1029–30. AAC is treated fairly because it is already

on notice that it can be sued in Colorado, where it sells service plans via

telemarketing. *See World-Wide Volkswagen*, 444 U.S. at 297 (a company that

"purposefully avails itself of the privilege of conducting activities within the forum

State . . . has clear notice that it is subject to suit there" (citations and internal

quotation marks omitted)). It can therefore take steps to "alleviate the risk of

burdensome litigation" by imposing a surcharge for Colorado customers, restricting

---

unclear how much AAC knew about Mr. Hood. It apparently knew the model year of his cars and that their warranty was expiring. Perhaps it also knew where those cars were registered and Mr. Hood's address.

[4] Say, suit against AAC were based on the failure of the telemarketer to make disclosures required by Colorado law, but not by Vermont law. If AAC telemarketers made the disclosures when calling Colorado phone numbers, we would have a different case.

the type of business it does in Colorado, or by choosing not to place telemarketing calls to Colorado phone numbers at all. *Id.* And the result harmonizes with principles of interstate federalism. *See Ford*, 141 S. Ct. at 1025, 1030. A State has "significant interests" in "providing [its] residents with a convenient forum for redressing injuries inflicted by out-of-state actors, as well as enforcing [its] own safety regulations." *Id.* at 1030 (internal quotation marks omitted).

AAC's attempts to distinguish *Ford* are unpersuasive. First, it points out that although the relatedness inquiry does not require causation, the Court still stated, "That does not mean anything goes." *Id.* at 1026. But AAC does not explain how the nature of the relationship between its calls to Colorado and Mr. Hood's claim is meaningfully different from the relationship between the forum contacts and the claims in *Ford*. At oral argument AAC's counsel emphasized that the relationship between Ford's forum contacts and the accidents was stronger because they involved the *very* model of vehicle that Ford sold into the forum States. By contrast, he continued, AAC's Colorado contacts do not include the "very activity" at issue here—calling Vermont phone numbers. Oral Argument at 20:57–22:12. But when the content of the solicitation calls is essentially the same whether calling a Vermont number or a Colorado number, it is appropriate to say that residents of both States receive the same "model" call.

We recognize, as AAC has also argued, that it is not Ford. It does not have the "truckload of contacts" in Colorado that Ford has in Minnesota and Montana. *Ford,* 141 S. Ct. at 1031. But *Ford* did not limit its holding to cases with similarly

13

voluminous contacts. Instead, it clarified that the Court's precedents did not support requiring strict causation as a general principle, not just on the specific facts there. *See id.* at 1026. AAC's contacts with Colorado suffice if they satisfy the purposeful-direction requirement discussed in the next section of this opinion and if they regularly include activity substantially the same as that giving rise to the claim against it.

AAC further urges that its telemarketing efforts are more like "internet transactions," which *Ford* explicitly declined to address as they "may raise doctrinal questions of their own." 141 S. Ct. at 1028 n.4. We disagree. What makes internet transactions difficult to fit within traditional specific-jurisdiction doctrine is that the defendant's conduct may be passive—for example, merely hosting a website that can be accessed by virtually anyone. Courts are reluctant to say that hosting a website constitutes purposeful direction to every jurisdiction on the globe. *See Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011). Thus, we "ask whether the defendant intended its online content to create effects specifically in the forum state." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 917 n.35 (10th Cir. 2017). AAC's telemarketing is not similarly passive. AAC places calls to potential customers, and it even argues that it can tell in what State it is marketing by looking at the area code of the telephone number it is calling. Our internet personal-jurisdiction jurisprudence does not assist AAC.

We therefore reject the argument that there is an insufficient relationship between Mr. Hood's injury in Colorado and AAC's contacts there. *Ford* makes clear

14

that specific jurisdiction is proper when a resident is injured by the very type of activity a nonresident directs at residents of the forum State—even if the activity that gave rise to the claim was not itself directed at the forum State.

### B.    Purposeful Direction

As previously stated, the first requirement that must be satisfied before a defendant is subject to the jurisdiction of the forum State is that the defendant must have "purposefully directed [its] activities at residents of the forum." *Burger King*, 471 U.S. at 472 (internal quotation marks omitted). This requirement ensures that a nonresident is not forced to defend suit in a jurisdiction based on "random, fortuitous, or attenuated contacts, or of the unilateral activity of another." *Id.* at 475 (citations and internal quotation marks omitted). AAC argues that this requirement was not satisfied.[5] We disagree.

Referencing information obtained from AAC's website, Mr. Hood alleged that AAC maintained "continuous and systematic contacts" with Colorado through targeted telemarketing efforts and that it used telemarketing to sell service contracts "nationwide, including in Colorado by calling Colorado phone numbers." Aplt. App. at 19. AAC did not contradict these assertions and the district court found Mr. Hood's well-pleaded allegations sufficient to establish a prima facie showing of purposeful direction.

---

[5] The district court ruled in favor of Mr. Hood on this issue. But AAC need not file a cross appeal to seek affirmance of the judgment on an alternative ground. *See Jennings v. Stephens*, 574 U.S. 271, 276 (2015).

15

AAC's argument on appeal is that Mr. Hood's allegations about its Colorado telemarketing are irrelevant because purposeful direction depends exclusively on "the contacts out of which a plaintiff's claim arises." Aplee. Br. at 22.[6] And, it maintains, AAC's call to Mr. Hood cannot show purposeful direction toward Colorado residents because it "is only randomly associated with Colorado due to the unilateral activity of Hood, who relocated from Vermont to Colorado and happened to be in Colorado when he received the call." *Id.* at 33. We disagree with the premise that purposeful direction must be based solely on the contacts that generated the cause of action. We draw that conclusion from the opinion in *Ford*.

Although the purposeful-direction prong was not before the Court in *Ford* (Ford conceded the issue), AAC's argument is incompatible with the Court's conclusion that purposefully directed in-state contacts can be sufficiently related to the plaintiff's injury despite the absence of a causal connection. *See Ford*, 141 S. Ct. at 1026. If, as AAC suggests, the purposeful-direction prong permits consideration of only contacts giving rise to the injury, then *Ford*'s holding would be an empty vessel. The whole point of *Ford* was that it is enough if the activity forming the basis of the claim against the defendant is *related* to the activity of the defendant that establishes that it "purposefully directed [its] activities at residents of the forum." *Burger King*, 471 U.S. at 472 (internal quotations omitted). The Court rejected the proposition that there need be "a strict causal relationship between the defendant's in-state activity

---

[6] AAC also briefly, and unpersuasively, argues that Mr. Hood's allegations are "conclusory and insufficient as a matter of law." Aplee. Br. at 24.

and the litigation." *Ford*, 141 S. Ct. at 1026. But if, as AAC argues, the activities establishing purposeful direction must themselves be conduct out of which the claim against the defendant arises, then there would always be a causal relationship between the purposefully directed activity and the claim. *Ford*'s recognition of a noncausal relationship as the predicate for personal jurisdiction would have zero real-world impact. *Ford* would have been a fruitless, academic exercise.

Finally, AAC's suggestion that it fortuitously reached a Colorado resident when it dialed a Vermont phone number works as much in Mr. Hood's favor as in AAC's. AAC argues that it injured Mr. Hood in Colorado only because of *his* unilateral decision to move there. But if, as alleged by Mr. Hood, AAC purposefully directs its activities at Colorado residents by regularly telemarketing to them, what is fortuitous is that a Colorado resident had a Vermont cell phone number. That is not the sort of happenstance that creates any due-process concern.

Compare the circumstances of this case with the fortuitous forum contacts in the cases AAC relies on where the Supreme Court ruled that there was no personal jurisdiction in the forum State. In *Walden v. Fiore*, two professional gamblers sued a Georgia police officer in Nevada, where the gamblers lived, after the officer seized their cash at an Atlanta airport during a layover. *See* 571 U.S. 277, 280–81 (2014). Other than the plaintiffs' presence in Nevada, there was no connection between that State and the Georgia police officer. *See id.* at 289 ("[The officer] never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada."). And in *World-Wide Volkswagen*, 444 U.S. at 295, the "fortuitous

17

circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma" was insufficient for Oklahoma to exercise jurisdiction over East Coast automobile retailers who had no other contacts there. Unlike the local police officer in *Walden* and the regional retailers in *World-Wide Volkswagen*, AAC is alleged to have regularly engaged in Colorado in the very type of activity that allegedly injured Mr. Hood in Colorado.

Mr. Hood's uncontradicted assertion that AAC directs telemarketing calls at Colorado satisfied the purposeful-direction requirement.

## C. Fair Play and Substantial Justice

Finally, AAC argues that jurisdiction in Colorado does not "comport with fair play and substantial justice." *Burger King*, 471 U.S. at 476 (internal quotation marks omitted). We are not persuaded.

We consider five factors in analyzing this issue:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1289 (10th Cir. 2020) (internal quotation marks omitted). Instances where an otherwise valid exercise of personal jurisdiction would be constitutionally unfair are "rare." *Id.* at 1289. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must

18

present a compelling case that . . . other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Mr. Hood's lawsuit is a putative class action under federal law. Because no State's substantive law is at stake and the class may have members from throughout the country, AAC argues that the interests in hosting the litigation are muted for any particular State, except Florida, where a majority of defendants reside. We question whether our personal-jurisdiction analysis should be affected by the possibility that this litigation could ultimately be a class-action proceeding. *See Lyngaas v. Ag*, 992 F.3d 412, 433 (6th Cir. 2021) (noting that personal-jurisdiction analysis in the context of class actions has long "focused on the defendant, the forum, and the *named plaintiff*, who is the putative class representative"); *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020) (similar). But in any event, this is not a "rare" case with special considerations that compel a determination against personal jurisdiction. This is rather standard fare: a resident of the forum State injured in that State by conduct emanating from another State brings suit in his home State.

AAC has not explained how any of the five factors listed above suggest that litigating this dispute in Colorado would be unfair to it, except for the inconvenience. But that inconvenience is hardly something rare. The selection of the location of court proceedings in this case will necessarily inconvenience one party or the other, but discovery will likely be largely unaffected; and AAC has not shown that trial in Colorado would be unduly burdensome, arguing only that it and the other defendants are not "'large interstate compan[ies] accustomed to conducting business and

19

litigation in multiple states.'" Aplee. Br. at 44 (quoting *Intercon Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1249 (10th Cir. 2000)). Perhaps a change of venue would be appropriate if this litigation matures into a class action against all presently named defendants. But we are not persuaded that requiring AAC to answer in Colorado for the alleged violation of federal law through its telemarketing in Colorado is incompatible with fair play and substantial justice.[7] We reject AAC's argument.[8]

---

[7] We have found only one Supreme Court opinion and three opinions of this court that have relied on an independent assessment of fairness to defeat specific jurisdiction where it otherwise would have been proper; and all have involved foreign defendants. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102,114–15 (1987); *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1292–93 (10th Cir. 2007); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1078–79 (10th Cir. 2004); *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1095–96 (10th Cir. 1998). (In *Asahi* a four-Justice plurality opinion would have held that the plaintiff had not shown that the defendant had purposefully availed itself of the California market, *see* 480 U.S. at 112; but a concurrence of four other Justices would have held otherwise, *see id.* at 116 (Brennan, J., concurring), and the concurring opinion of Justice Stevens thought it unnecessary to resolve the issue, *see id.* at 121–22.) As noted by the plurality opinion in *Asahi*, "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114 (plurality opinion). Moreover, in the three cases decided by this court the underlying dispute needed to be resolved under foreign law. *See TH Agric. & Nutrition, LLC*, 488 F.3d at 1297; *Benton v. Cameco Corp.*, 375 F.3d at 1079–80; *OMI Holdings, Inc.*, 149 F.3d at 1096; *see also Asahi*, 480 U.S. at 115 ("[I]t is not at all clear at this point that California law should govern the question whether a Japanese corporation should indemnify a Taiwanese Corporation on the basis of a sale made in Taiwan and a shipment of goods from Japan to Taiwan.").

[8] AAC's brief raises two alternative arguments supporting affirmance with respect to other defendants, even if there is personal jurisdiction over AAC itself: (1) that Mr. Hood has not alleged facts that support imputing AAC's alleged forum contacts to the other defendants and (2) that he has failed to state a claim for relief

## III.    CONCLUSION

We **REVERSE** the district court's order dismissing Mr. Hood's suit against AAC for lack of personal jurisdiction and **REMAND** for further proceedings consistent with this opinion.

---

against the defendant Matrix. These arguments are better addressed in the first instance by the district court. We note, however, that although the district court dismissed all the named defendants under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, two defendants (Royal Administration Services, Inc. and Carguard Administration Inc.) have not been served with process, and defendant EGV Companies, Inc. denied personal jurisdiction in its answer but has not moved for dismissal on that ground, *see* Fed. R. Civ. P. 12(b) ("A motion asserting any of [the listed] defenses must be made before pleading if a responsive pleading is allowed.").