**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MATT YAMASHITA,<br>   *Plaintiff-Appellant,*<br><br> v.<br><br>LG CHEM, LTD.; LG CHEM<br>AMERICA, INC.,<br>   *Defendants-Appellees,*<br><br> and<br><br>COILART; GEARBEST.COM; WA<br>FA LA INC.; DOES, DOE LG Entities<br>1-10; John Does 1 - 10; Jane Does 1-<br>10; Doe Corporations 1-10; Doe<br>Partnerships 1-10; Doe Limited<br>Liability Companies 1-10; Doe<br>Business Entities 1-10; Doe<br>Governmental Entities 1-10; Doe<br>Unincorporated Associations 1-10,<br>   *Defendants.* | No. 20-17512<br><br>D.C. No. 1:20-cv-<br>00129-DKW-RT<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Hawaii
Derrick Kahala Watson, District Judge, Presiding

Argued and Submitted January 21, 2022
Submission Withdrawn September 8, 2022
Resubmitted February 27, 2023
Honolulu, Hawaii

Filed March 6, 2023

Before:  Diarmuid F. O'Scannlain, Eric D. Miller, and
Kenneth K. Lee, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Personal Jurisdiction / Jurisdictional Discovery

The panel affirmed the district court's dismissal for lack of personal jurisdiction of a products-liability suit brought by Matt Yamashita against LG Chem, Ltd. ("LGC") and LG Chem America, Inc. ("LGCA"), claiming that they negligently manufactured and distributed a battery which he used to power an electronic cigarette until the battery and electronic cigarette both exploded in his mouth.

Yamashita is a resident of Hawaii, and he alleged that he purchased the battery from an unidentified third party to whom LGC and LGCA had distributed for resale in Hawaii.  LGC is a South Korean company headquartered in

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Seoul, South Korea. LGCA is a wholly-owned marketing subsidiary of LGC, and a Delaware corporation with its principal place of business in Georgia.

After Yamashita appealed, but before he filed his opening brief, the U.S. Supreme Court issued its decision in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021).

Since this case was brought in Hawaii, and Hawaii's long-arm statute allows Hawaii courts to invoke personal jurisdiction to the extent permitted by the due process clause, a court sitting in Hawaii can exercise jurisdiction over Yamashita's claims against LGC and LGCA if doing so is consistent with the Fourteenth Amendment. Supreme Court precedents recognize two kinds of personal jurisdiction: general and specific jurisdiction.

Yamashita argued that LGC and LGCA's contacts with Hawaii were sufficient to establish general personal jurisdiction. The panel held that LGC and LGCA are not "at home" in Hawaii, and the district court of Hawaii could not exercise general personal jurisdiction over them.

For an exercise of specific personal jurisdiction, the due process clause requires that the defendant "take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State," and that the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Ford*, 141 S. Ct. at 1024-25." The panel held that *Ford* modified, but did not abolish, the requirement that a claim must arise out of or relate to a forum contact in order for a court to exercise specific personal jurisdiction.

Under Ninth Circuit law, the placement of a product into the stream of commerce, by itself, is not an act purposefully directed toward the forum state. The panel held that under the stream-of-commerce-plus test, only some of the alleged contacts between LGC and LGCA and Hawaii count as purposeful availment. First, LGC and LGCA's shipments to and through the port of Honolulu qualified as purposeful availment. Second, LGC's involvement in the sale of residential solar batteries in Hawaii qualified as purposeful availment. Third, the various consumer products sold in Hawaii containing LGC's 18650 lithium-ion batteries did not show purposeful availment, but only a bare stream of commerce. Fourth, LGC's introduction of stand-alone 18650 batteries into the stream of commerce through a third-party website did not amount to purposeful availment without some indication that LGC was targeting the Hawaii market. The panel concluded that half of the alleged contacts were not contacts at all, but for purposeful availment purposes, a single sufficiently deliberate contact can suffice.

While LGC and LGCA's Hawaii contacts clearly showed that they purposefully availed themselves of Hawaii law, they can only be subject to specific personal jurisdiction if Yamashita's injuries arose out of or relate to those contacts. The panel held that Yamashita had not shown that his injuries arose out of any contacts because he had not shown but-for causation. Of the four types of contacts he alleged, only two were actually forum contacts within the meaning of the specific personal jurisdiction test: the use of the port of Honolulu and the activity in the market for solar batteries. Neither established but-for causation. The panel further held that Yamashita had not shown relatedness. Given that Yamashita could not show that his

injury arose out of or related to LGC or LGCA's Hawaii contacts, the district court did not err in dismissing for lack of personal jurisdiction over either firm.

The panel next considered the district court's denial of jurisdictional discovery.  First, Yamashita sought evidence that LGC and LGCA had forum contacts related to the use of lithium-ion batteries, particularly 18650 batteries, in consumer products.  The panel held that such contacts might satisfy the "relates to" prong of the specific personal jurisdiction test if causing one's lithium-ion batteries to be incorporated into consumer products meant entering the consumer marker for stand-alone lithium-ion batteries. But this was implausible.  Second, Yamashita sought evidence that the subject battery was removed from a consumer product within Hawaii and resold to him as a stand-alone product.  Such evidence, in combination with previously discussed hypothetical evidence, could satisfy the "arise out of" prong.  The panel held that Yamashita's theory was too speculative to ground jurisdictional discovery, and it was not an abuse of discretion for the district court to reach this conclusion.  Third, Yamashita sought to show that LGC and LGCA in fact sell 18650 batteries to third-party distributors intending for them to introduce the batteries to Hawaii as a stand-alone products, and that Yamashita bought the subject battery from such a distributor.  Declarations denied that LGC of LGCA authorized any third parties to sell stand-alone 18650 batteries.  The panel held that in the context of a motion for jurisdictional discovery, Yamashita's bare allegations were trumped by the sworn statements to the contrary.  The panel concluded that the district court's denial of jurisdictional discovery was not an abuse of discretion.

**COUNSEL**

Jeremy K. O'Steen (argued) and James J. Bickerton, Bickerton Law Group LLP, Honolulu, Hawaii, for Plaintiff-Appellant.

Wendy S. Dowse (argued), Lewis Brisbois Bisgaard & Smith LLP, Indian Wells, California; Stefan M. Reinke, Lyons Brandt Cook & Hiramatsu, Honolulu, Hawaii; for Defendants-Appellees.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide, in light of the Supreme Court's recent *Ford Motor Company* decision, whether a district court can exercise personal jurisdiction over an out-of-state manufacturer that has various forum contacts, but does not sell the allegedly defective product as a stand-alone product to in-state consumers.

I

Matt Yamashita brought this products-liability suit against LG Chem, Ltd. ("LGC") and LG Chem America, Inc. ("LGCA"), claiming that they negligently manufactured and distributed a battery which he used to power an electronic cigarette until the battery and electronic cigarette both exploded in his mouth.

A

Yamashita is a resident of Hawaii. In December 2017, the subject battery exploded, causing severe and permanent injury. Yamashita alleges that the subject battery was an 18650 lithium-ion battery—that is, a lithium-ion battery 18mm in diameter, 65mm in length, and cylindrical in shape—designed, manufactured, and distributed by LGC and LGCA. Yamashita alleges that he purchased the battery from an unidentified third party to whom LGC and LGCA had somehow distributed it for resale in Hawaii.

B

LGC, a South Korean company headquartered in Seoul, South Korea, produces lithium-ion batteries. LGC sells 18650 lithium-ion batteries to manufacturers for use in consumer products such as mobile devices, notebook computers, and power tools. But LGC denies distributing, advertising, or selling any 18650 lithium-ion batteries directly to consumers as stand-alone batteries.

LGCA, a wholly-owned marketing subsidiary of LGC, is a Delaware corporation with its principal place of business in Georgia that resells and distributes various industrial products. LGCA does not manufacture any products it distributes. LGCA has facilitated sales of LGC 18650 batteries between LGC and at least one entity customer in Texas. But LGCA denies selling to individual consumers.

LGC and LGCA each have various contacts and alleged contacts with Hawaii. These contacts fall into four broad categories:

First, both firms have shipped products through the port of Honolulu. Some of these shipments went to Hawaii-based companies, and some contained lithium-ion batteries, but the

record does not show whether these subsets overlapped, or whether any shipment contained 18650 batteries. Yamashita alleges that LGC and LGCA have shipped lithium-ion batteries into Hawaii.

Second, LGC has significant involvement in the sale of residential solar batteries in Hawaii. Various LGC representatives have visited Hawaii for reasons related to such business.

Third, various consumer products sold in Hawaii contain LGC-produced lithium-ion batteries, including 18650 batteries. Again, the record does not show whether any of these batteries are brought into Hawaii by LGC, nor whether, if third parties acquire the batteries elsewhere for incorporation into consumer products, LGC and LGCA nevertheless play some role in directing the batteries toward Hawaii. Yamashita alleges that LGC and LGCA provide 18650 batteries for products that they expect will be sold in Hawaii.

Finally, a third-party website sells stand-alone LGC-produced 18650 lithium-ion batteries. The record does not reveal how this website obtains the batteries. Yamashita alleges that LGC and LGCA sell their batteries to the third-party website knowing that they will be sold into Hawaii as stand-alone batteries. But declarations from LGC and LGCA employees deny that either firm has authorized any third-party retailer or distributor to sell stand-alone 18650 batteries in Hawaii, or anywhere for that matter.

## C

Yamashita sued LGC and LGCA in Hawaii state court, bringing various state-law claims related to the design, manufacture, labeling, advertising, and distribution of the

subject battery. LGC and LGCA timely removed from Hawaii state court to the District Court for the District of Hawaii, and then moved to dismiss Yamashita's complaint for lack of personal jurisdiction. Yamashita opposed the motions and moved for jurisdictional discovery.

The district court denied Yamashita's motion for jurisdictional discovery. Based on the allegations, as well as exhibits and declarations submitted by the parties, the district court granted the motions to dismiss Yamashita's claims for lack of personal jurisdiction over LGC and LGCA. Yamashita timely appealed.

After Yamashita appealed, but before he filed his opening brief, the Supreme Court issued its decision in *Ford Motor Co. v. Montana Eighth Judicial District Court ("Ford")*, which is the most recent Supreme Court guidance on personal jurisdiction. 141 S. Ct. 1017 (2021).

## II

## A

We determine *de novo* whether Yamashita met his burden of establishing that jurisdiction is proper. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* at 1073 (cleaned up). Uncontroverted allegations in the complaint are taken as true, but in the face of a contradictory affidavit, the "plaintiff cannot simply rest on the bare allegations of its complaint." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (cleaned up).

B

"A federal district court sitting in diversity has in personam jurisdiction over a defendant to the extent the forum state's law constitutionally provides." *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990). Since this case was brought in Hawaii, and "Hawaiʻi's long-arm statute allows Hawaiʻi courts to invoke personal jurisdiction to the full extent permitted by the due process clause," *Yamashita v. LG Chem, Ltd.*, 518 P.3d 1169, 1171 (Haw. 2022), the statutory question here collapses into the constitutional one: a court sitting in Hawaii can exercise jurisdiction over Yamashita's claims against LGC and LGCA if doing so is consistent with the Fourteenth Amendment. The Supreme Court's due process precedents have "recogniz[ed] two kinds of personal jurisdiction: general … and specific … jurisdiction." *Ford*, 141 S. Ct. at 1024. Yamashita argues that both apply here.

C

General personal jurisdiction permits a court to hear "any and all claims" brought against a defendant, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011), concerning any of the defendant's activity "anywhere in the world," *Ford*, 141 S. Ct. at 1024. For a court to exercise general personal jurisdiction over a defendant corporation, the defendant's contacts with the forum state must be "so continuous and systematic as to render [it] essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (cleaned up). A corporation is "at home" in "its place of incorporation and principal place of business," and "in an exceptional case a corporation might also be 'at home' elsewhere." *Ford*, 141 S. Ct. at 1024 (cleaned up).

Neither LGC nor LGCA has Hawaii as its place of incorporation or principal place of business. Yamashita argues that their contacts with Hawaii are sufficient to establish general personal jurisdiction, but nothing about these "random, fortuitous, [and] attenuated contacts" merits an exception to the rule. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993) (cleaned up). If they did, the exceptions would swallow the rule, such that most international firms selling into the U.S. market would be at home in most U.S. states, despite being neither incorporated nor headquartered in any of them. LGC and LGCA are not at home in Hawaii, and the district court of Hawaii cannot exercise general personal jurisdiction over them.

## D

Even absent general personal jurisdiction, the district court might be able to exercise specific personal jurisdiction. For an exercise of specific personal jurisdiction, the due process clause requires, *inter alia*, that the defendant "take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State," and that the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Ford*, 141 S. Ct. at 1024-25 (cleaned up).

### 1

#### i

For LGC and LGCA to have purposefully availed themselves of the laws of Hawaii, they must have "deliberately reached out beyond [their] home[s]—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Id*. at 1025 (cleaned up). "[U]nilateral activity of another party or a third

person" does not suffice. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Under our circuit's law, "[t]he placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state," even if the defendant is "aware[] that the stream of commerce may or will sweep the product into the forum state." *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 112 (1987) (O'Connor, J., plurality opinion) (finding no purposeful availment in part because defendant "did not create, control, or employ the distribution system that brought its [product] to [the forum state]")). This approach is referred to as the "stream-of-commerce-plus test." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 585 (5th Cir. 2014).

Yamashita argues that the stream-of-commerce-plus test was abrogated by Justice Breyer's minority opinion in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011). But this argument is unconvincing. While Justice Breyer did suggest that the Court might reject purposeful availment in an appropriate case, he did not find *J. McIntyre* an appropriate case for any legal development. *Id*. at 890 (Breyer, J., concurring in the judgment) ("[O]n the record present here, resolving this case requires no more than adhering to our precedents.… I would not go further."). Since his opinion did nothing more than adhere to existing Supreme Court precedents, it could not have abrogated our circuit's existing rule, which was based on those same precedents.

ii

Under the stream-of-commerce-plus test, only some of the alleged contacts between LGC and LGCA and Hawaii count as purposeful availment:

First, Yamashita points to LGC and LGCA's shipments to and through the port of Honolulu. These contacts do qualify as purposeful availment—LGC and LGCA relied on the laws of Hawaii to protect their property while it was located within its jurisdiction.

Second, Yamashita points to LGC's involvement in the sale of residential solar batteries in Hawaii. These contacts also clearly qualify as purposeful availment.

Third, Yamashita points to the various consumer products sold in Hawaii containing LGC's 18650 lithium-ion batteries. On their own, these sales do not show purposeful availment, but only a bare stream of commerce. The record does not show that LGC deliberately navigates the stream of commerce towards Hawaii, either by introducing these batteries into Hawaii itself, or by "creat[ing], control[ling], or employ[ing] the distribution system" which does so. *Asahi*, 480 U.S. at 112.

Finally, Yamashita alleges that LGC introduced stand-alone 18650 batteries into the stream of commerce through a third-party website. But both firms submitted sworn statements denying these allegations, and Yamashita offers no evidence to the contrary. And even if LGC did sell its batteries to a third-party website, that conduct would not amount to purposeful availment without some indication that LGC was targeting the Hawaii market.

In sum, half of Yamashita's alleged contacts are not contacts at all—but for purposeful availment purposes, a single sufficiently deliberate contact can suffice.

### 2

While LGC and LGCA's Hawaii contacts clearly show that they purposefully availed themselves of Hawaii law, they cannot be subject to specific personal jurisdiction there unless Yamashita's injuries "arise out of or relate to" those contacts. *Ford*, 141 S. Ct. at 1025 (cleaned up).

### i

We have long understood that for an injury to arise out of a defendant's forum contacts required "but for" causation, in which "a direct nexus exists between [a defendant's] contacts [with the forum state] and the cause of action." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) (cleaned up), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015). The Supreme Court announced in *Ford* that 'arise out of' and 'relate to' are alternatives: for a claim to arise out of a defendant's forum contacts requires causation, while a claim can relate to those contacts, even absent causation, where, for example, "a company … serves a market for a product in the forum State and the product malfunctions there." *Ford*, 141 S. Ct. at 1026-27. Specifically, *Ford* held that Ford Motor Company was subject to specific personal jurisdiction over claims of injuries caused by a Ford Explorer in Montana, and by a Ford Crown Victoria in Minnesota, despite the vehicles having been sold by Ford out-of-state, because:

> By every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail—Ford urges Montanans and

Minnesotans to buy its vehicles, including (at all relevant times) Explorers and Crown Victorias. Ford cars—again including those two models—are available for sale, whether new or used, throughout the States, at 36 dealerships in Montana and 84 in Minnesota. And apart from sales, Ford works hard to foster ongoing connections to its cars' owners. The company's dealers in Montana and Minnesota (as elsewhere) regularly maintain and repair Ford cars, including those whose warranties have long since expired. And the company distributes replacement parts both to its own dealers and to independent auto shops in the two States. Those activities, too, make Ford money. And by making it easier to own a Ford, they encourage Montanans and Minnesotans to become lifelong Ford drivers.

*Id.* at 1028.

*Ford* explicitly stated that it did "not address" a scenario in which Ford sold other models in the forum state, but "marketed the models [in question] in only a different State or region." *Id*. Nor has our circuit addressed a scenario in which the defendants had extensive forum contacts, and the main question was whether they sufficiently related to the plaintiff's injury. *See LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864 (9th Cir. 2022) (finding that a defendant's sole forum contact, ownership of a service station, did not relate to the alleged injury). Accordingly, we look beyond *Ford*'s holding to its reasoning. Three aspects of *Ford*'s reasoning provide guidance on how to determine

whether a defendant's contacts sufficiently relate to a plaintiff's injury.

First, the Court emphasized that Ford's forum contacts may well have played a causal role in the introduction to the forum state of the particular vehicle causing the injury: the owner may have seen "ads for the [model] in local media," or "take[n] into account a raft of Ford's in-state activities designed to make driving a Ford convenient there." *Ford*, 141 S. Ct. at 1029. Given the likelihood of causation, the Court reasoned, jurisdiction should not "ride on the exact reasons for an individual plaintiff's purchase, or on his ability to present persuasive evidence about them." *Id*. In effect, relatedness proxies for causation, ensuring jurisdiction over a class of cases for which causation seems particularly likely but is not always easy to prove. On this line of reasoning, a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts.

Second, the Court emphasized that exercising jurisdiction was fair to Ford because, by "extensively market[ing]" the car models at issue in the forum states, Ford incurred an obligation to ensure that the models were "safe for their citizens to use there." *Id.* at 1030. This reasoning would not apply if Ford had marketed only other models in the forum states—otherwise Ford would have to choose either to leave the forum state's auto market *entirely*, or to expose itself to suits in the forum state based on vehicles of a type which Ford never sold there, but which were brought in by third parties. On this line of reasoning, a plaintiff's injury relates to a defendant's forum contacts if the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff.

Third, *Ford* makes clear that 'relate to' "does not mean anything goes." 141 S. Ct. at 1026. To the contrary, to give 'relate to' too broad a scope would risk "collaps[ing] the core distinction between general and specific personal jurisdiction." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 866 (D.C. Cir. 2022). Other circuits' applications of *Ford* suggest that relatedness requires a close connection between contacts and injury. *See, e.g.*, *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 625-27 (7th Cir. 2022) (finding relatedness when a company sold an allegedly trademark-infringing product online and it was purchased by at least one resident of the forum state); *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1220 (10th Cir. 2021) (finding relatedness when a telemarketer called a forum resident's out-of-state cell phone number because the telemarketer regularly made similar phone calls to in-state numbers).

ii

Given this understanding of *Ford*, we must determine whether Yamashita's injuries either arose out of or related to LGC and LGCA's Hawaii contacts.[1]

---

[1] We note considerable confusion among district courts about how to apply *Ford* in cases highly similar to those at issue here. *See, e.g.*, *Richter v. LG Chem, Ltd.*, No. 18 CV 50360, 2022 WL 5240583, at *3 (N.D. Ill. Sept. 27, 2022) (finding no jurisdiction over LGC); *LG Chem, Ltd. v. Superior Ct.*, 295 Cal. Rptr. 3d 661, 679 (Ct. App. 2022) (similar), *review denied* (Oct. 12, 2022); *LG Chem, Ltd. v. Granger*, No. 14-19-00814-CV, 2021 WL 2153761, at *7 (Tex. App. May 27, 2021) (similar). *But see, e.g.*, *Eisenhauer v. LG Chem, Ltd.*, No. 21-CV-964, 2022 WL 123783, at *4 (E.D. Mo. Jan. 13, 2022) (finding no jurisdiction over LGCA); *id.*, 2022 WL 2208952, at *6 (E.D. Mo. June 21, 2022) (but finding jurisdiction over LGC).

Yamashita has not shown that his injuries arose out of any contacts because he has not shown but-for causation. Of the four types of contacts he alleged, only two were actually forum contacts within the meaning of the specific personal jurisdiction test: the use of the port of Honolulu, and the activity in the market for solar batteries. The former does not establish but-for causation because Yamashita does not allege that LGC or LGCA shipped the subject battery into the port of Honolulu. The latter does not establish but-for causation because Yamashita does not allege that LGC's activity in the solar battery market caused the introduction of the subject battery to Hawaii.

Yamashita also has not shown relatedness. Again, only the port and solar contacts count as forum contacts to which Yamashita's injury could relate. Regarding the port contacts, Yamashita suggests that his injury related to various shipments—shipments of batteries in that Yamashita was injured by a battery, and shipments of raw materials "to the extent these types of products go into lithium-ion battery production." This is implausible. *Ford* found specific jurisdiction because Ford sold the relevant models to consumers in the forum states, not because it shipped raw materials, or even completed cars, through those states. Regarding the solar contacts, Yamashita suggests that his injury related to LGC's sale of solar batteries because his injury was allegedly caused by an LGC-manufactured battery. But the large batteries installed in stationary solar-power systems and the small portable stand-alone battery at issue here are as different as sedans and 18-wheelers. There is little reason to believe that either firm's port contacts or LGC's solar contacts have anything to do with Hawaii residents' acquisition of 18650 lithium-ion batteries.

Given that Yamashita cannot show that his injury arose out of or related to LGC or LGCA's Hawaii contacts, the district court did not err in dismissing for lack of personal jurisdiction over either firm.

## III

Since Yamashita had not pled facts sufficient to establish personal jurisdiction, we consider the district court's denial of jurisdictional discovery.

## A

We review denials of jurisdictional discovery for abuse of discretion. *Laub v. U.S. Dept. of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). Jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* (cleaned up). But "a mere hunch that discovery might yield jurisdictionally relevant facts, or bare allegations in the face of specific denials, are insufficient reasons for a court to grant jurisdictional discovery." *LNS Enters.*, 22 F.4th at 864-65 (cleaned up). "The district court's refusal to provide such discovery will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (cleaned up).

## B

Yamashita sought jurisdictional discovery on various issues. Given our analysis of specific personal jurisdiction, most of the information he seeks is clearly irrelevant—the jurisdictional analysis would not be affected by the details of LGC or LGCA's use of the port of Honolulu, or the extent

to which either firm sells or authorizes the sale in Hawaii of products containing 18650 batteries, or the precise relationship between the two entities. But Yamashita does seek three pieces of information whose irrelevance to the jurisdictional determination is less obvious.

1

First, Yamashita seeks evidence that LGC and LGCA have forum contacts related to the use of lithium-ion batteries, and particularly 18650 batteries, in consumer products. Yamashita hypothesizes that these firms either are directly responsible for shipping such batteries into Hawaii, or that they purposefully avail themselves of the laws of Hawaii through contractual agreements requiring manufacturers of battery-containing products to market their products in Hawaii.

Such contacts might satisfy the 'relates to' prong of the specific personal jurisdiction test if causing one's lithium-ion batteries to be incorporated into consumer products meant entering the consumer market for stand-alone lithium-ion batteries. But this is implausible. Whether the relevant market is that for lithium-ion batteries generally or that for 18650 batteries specifically, the relevant market is the consumer market. The logic of *Ford* did not turn on the mere fact that Ford had introduced some Explorers and Crown Victorias into Montana and Minnesota, but on the fact that it marketed these models to consumers, sold them to consumers, and serviced them for consumers. *Ford* gives little reason to think that the relatedness prong would have been satisfied if, for example, Ford had sold Crown Victorias only to police departments in Minnesota, had not marketed them to consumers, and had not serviced them at all. Such contacts would not typically cause, and could not be foreseen

to cause, injuries resulting from consumer ownership of Crown Victorias, especially if most consumer-owned Crown Victorias were acquired out-of-state. Similarly, even if LGC or LGCA sells 18650 batteries to manufacturers for incorporation in consumer products sold in Hawaii, these sales would not be related to purchases of stand-alone batteries by Hawaii consumers.

2

Yamashita also seeks evidence that the subject battery itself was removed from a consumer product within Hawaii and resold to him as a stand-alone product. Such evidence, in combination with the hypothetical evidence discussed above, could satisfy the 'arises out of' prong. After all, if LGC and LGCA purposefully availed themselves of the laws of Hawaii by causing 18650 batteries to be incorporated into consumer products sold in Hawaii, and then such a battery were removed from such a device and sold to Yamashita, their contacts would be a but-for cause of Yamashita's injury.

But Yamashita has given no reason to think that the battery came from such a device—he only says that it cannot be ruled out. As evidence, he cites three YouTube how-to videos explaining how to remove 18650 batteries from various consumer products. He offers no evidence that batteries removed in this manner are ever resold commercially. This theory seems too speculative to ground jurisdictional discovery, and it certainly was not an abuse of discretion for the district court to reach this conclusion.

3

Finally, Yamashita seeks to show that LGC and LGCA in fact sell 18650 batteries to third-party distributors intending for them to introduce the batteries to Hawaii as stand-alone products, and that Yamashita bought the subject battery from such a distributor. Such evidence would show that LGC and LGCA purposefully availed themselves of the market for stand-alone 18650 batteries in Hawaii. Moreover, such evidence would establish relatedness, and likely also that Yamashita's injury arose out of the firms' Hawaii contacts.

But—again—declarations deny that LGC or LGCA have authorized any third parties to sell stand-alone 18650 batteries. In the context of a motion for jurisdictional discovery, just as in the context of a motion to dismiss for lack of jurisdiction, bare allegations are trumped by sworn statements to the contrary. *LNS Enters.*, 22 F.4th at 864-65.

In sum, Yamashita has no viable route to establish personal jurisdiction. Jurisdictional discovery would be little more than a fishing expedition seeking support for jurisdictional theories one of which is farfetched, and the other of which LGC and LGCA have specifically denied via sworn statements. The district court's denial of jurisdictional discovery was not an abuse of its discretion.

IV

*Ford* modified but did not abolish the requirement that a claim must arise out of or relate to a forum contact in order for a court to exercise specific personal jurisdiction. Yamashita has not met his burden to show that either prong is satisfied here, and he has only a mere hunch that jurisdictional discovery will allow him to meet his burden.

The district court did not err in dismissing for lack of personal jurisdiction. Neither did it abuse its discretion in denying jurisdictional discovery.

**AFFIRMED**.