**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GLOBAL COMMODITIES TRADING
GROUP, INC.; INSURANCE COMPANY
OF THE STATE OF PENNSYLVANIA,
　　　*Plaintiffs-Appellants*,

v.

BENEFICIO DE ARROZ CHOLOMA,
S.A., a Honduran Company; SADY
FARID ANDONIE REYES; JOYCE
MARY JARUFE DOX, AKA Joyce
Jarufe De Andonie,
　　　*Defendants-Appellees*.

No. 18-16026

D.C. No.
2:16-cv-01045-
TLN-CKD

OPINION

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Argued and Submitted December 4, 2019
San Francisco, California

Filed August 26, 2020

Before: Sidney R. Thomas, Chief Judge, and William A.
Fletcher and Eric D. Miller, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### Personal Jurisdiction / *Forum Non Conveniens*

The panel reversed the district court's order dismissing for lack of personal jurisdiction, vacated its orders on the parties' remaining motions, and remanded with instructions to deny the *forum non conveniens* motion in an action brought by Global Commodities Trading Group, Inc. ("Global"), a California corporation, against Beneficio De Arroz Choloma, S.A. ("Bachosa"), a Honduran corporation, and two of its officers to recover losses on contracts.

The panel held that the district court had specific personal jurisdiction over the corporate defendant, Bachosa. The panel was guided by the analysis in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). Interpreting genuine factual disputes in Global's favor, the panel held that Global made a prima facie showing that Bachosa reached out beyond Honduras to create continuing relationships and obligations with citizens of California. The panel further held that the district court erred by considering the parties' agreements in isolation, and ignored the business reality in which they were embedded. The panel concluded that Bachosa maintained numerous contacts with California during the course of its years long business relationship with Global.

The panel held that the district court had specific personal jurisdiction over the individual defendants. The panel noted

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that personal jurisdiction over an individual who acts as an agent of a third party must be assessed on the individual's actions alone. Interpreting genuine factual disputes in Global's favor, the panel concluded that the individual defendants had extensive contacts with California. The panel held that these contacts were sufficient to support the exercise of specific jurisdiction over them. The panel also held that the guaranty signed by the individual defendants provided an independent basis for personal jurisdiction over them.

The panel exercised its discretion to reach the issue of dismissal based on *forum non conveniens,* even though the district court had declined to consider it. The panel held that the balance of private and public interest factors did not favor dismissal. The panel held further that California law would likely govern key issues is this dispute, including the validity and enforceability of the parties' memorandum, note, and guaranty. In addition, there was a presumption in favor of Global's choice of its home forum – California. The panel held that litigation in the Eastern District of California would not result in disproportionate inconvenience. The panel remanded with instructions to deny the *forum non conveniens* motion on the merits.

## COUNSEL

Michael E. Chase (argued), Boutin Jones Inc., Sacramento, California, for Plaintiffs-Appellants.

Brant C. Hadaway (argued), Diaz Reus & Targ LLP, Miami, Florida, for Defendants-Appellees.

**OPINION**

W. FLETCHER, Circuit Judge:

From 2008 through 2012, Global Commodities Trading Group, Inc. ("Global"), sold over fifty million dollars of agricultural commodities to Beneficio de Arroz Choloma, S.A. ("Bachosa"). After Bachosa fell behind on its payments on two contracts, Global brought suit against the corporation and two of its officers in the United States District Court for the Eastern District of California. The district court dismissed Global's claims for lack of personal jurisdiction and denied as moot the defendants' motion to dismiss for *forum non conveniens*. We hold that the district court had personal jurisdiction over both the corporate and individual defendants and that litigation in the Eastern District of California would not result in disproportionate inconvenience. We therefore reverse in part, vacate in part, and remand with instructions to deny the *forum non conveniens* motion on the merits.

## I. Facts and Procedural History

Global is a California corporation with its headquarters in Placer County, California. At the time of the events giving rise to this action, it was engaged in the business of international sales of agricultural commodities. Bachosa is a corporation organized under the laws of Honduras with its principal place of business in Choloma, Cortés, Honduras. It is engaged in the business of importing and processing rice and corn from countries including the United States. Bachosa has no offices, real property, or employees in California.

From 2008 through 2012, Bachosa purchased approximately 137,450 metric tons of agricultural commodities from Global for more than $50 million pursuant to hundreds of separately negotiated contracts. The contracts generally were cost, insurance, freight ("CIF") contracts, meaning Global's contractual performance was considered complete when the goods were loaded at the point of shipment. Global and Bachosa primarily negotiated their contracts by phone and email. Global's President, Ramiro Velasquez, stated in his declaration that several Bachosa employees also made business trips to Global's office in California. Those employees included the individual defendants in this case—Bachosa's President, Sady Farid Andonie Reyes ("Andonie"), and Secretary, Joyce Mary Jarufe Dox ("Jarufe").

On December 17, 2011, Bachosa entered into a contract with Global to purchase 14,500 metric tons of U.S. No. 2 or better long grain rough rice and a separate contract to purchase 5,000 metric tons of U.S. No. 2 or better white corn. According to Velasquez's declaration, Andonie and Jarufe met with Global employees at Global's California office in January 2012 in connection with the contracts. Andonie and Jarufe represented to Global that they had successfully extended their Honduran import permits to allow receipt of the rice and corn under the contracts. Andonie and Jarufe dispute that such a meeting ever occurred. They claim to have traveled to California only on two occasions, each for purposes of tourism.

Following the alleged January meeting in California, Global arranged for shipment under the contracts. The United States Department of Agriculture issued an inspection

certificate for the rice and corn in Woodland, California. The goods were shipped from the United States from Port of Darrow, Louisiana to Puerto Cortes, Honduras on the *MV UBC Sacramento* on January 19, 2012.

Upon arrival of the *Sacramento* in Honduras, Honduran authorities did not allow the goods to be offloaded. Global alleges that, contrary to the representations Bachosa's employees had made in California earlier that month, the company's import permits were invalid. While held in port in Honduras, the *Sacramento* incurred demurrage charges of approximately $644,000. Bachosa failed to make timely payment under its two contracts with Global, which it attributed to being assessed a 45% import duty on the goods. After further negotiations, Global and Bachosa entered into a memorandum of understanding, under which Bachosa acknowledged that it owed Global $7,073,648 for the goods and $644,697.92 for the shipping delays, and agreed to pay those sums. Andonie signed the memorandum as "Owner and Legal Representative" of the corporation.

Contemporaneously with the execution of the memorandum, Bachosa executed a promissory note in favor of Global for $11,000,000, and Andonie and Jarufe executed a personal guaranty that designated Jarufe a surety of the note. Although the document purports to bear her signature, Jarufe stated in her declaration that she "did not sign the guaranty," had "never spoken with Global or any of its agents regarding the guaranty," and "[n]ever saw the guaranty" before seeing the complaint in this action. In his declaration, Andonie claimed that Velasquez told him that he needed the memorandum, promissory note, and guaranty only so that he "could have something to show the banks," and that the

agreements would not be legally binding.  Global provided the memorandum, note, and guaranty to its bank in order to maintain its line of credit.

In the spring of 2014, Bachosa defaulted on its obligations under the memorandum and note, and neither Andonie nor Jarufe made payment pursuant to the guaranty.  Global lost its line of credit and shuttered its office.

Global and its insurer brought suit in California state court later that year against Bachosa, Andonie, and Jarufe. The defendants removed the action to the United States District Court for the Eastern District of California.  Once in federal court, they moved to dismiss for lack of personal jurisdiction and for *forum non conveniens*.  The district court allowed limited jurisdictional discovery.  Without holding an evidentiary hearing, the district court granted the motion to dismiss for lack of personal jurisdiction.  It denied Global's motion for leave to amend its complaint to add claims for fraud related to Jarufe's purported signature on the guaranty and denied as moot defendants' motion to dismiss for *forum non conveniens*.  The district court reasoned that negotiations conducted through international communications were insufficient to support personal jurisdiction when the defendants were not physically present in the forum state.  It discounted the visits Andonie and Jarufe made to Global's California office on behalf of Bachosa because those visits, if made, dealt with the underlying commodities contracts, not the subsequently executed memorandum, note, and guaranty.

Global timely appealed.

## II. Standard of Review

"We review *de novo* a district court's dismissal for lack of personal jurisdiction." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). The plaintiff bears the burden of demonstrating that personal jurisdiction is proper. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). However, "[w]here, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). In this posture, we take as true all uncontroverted allegations in the complaint and resolve all genuine factual disputes in the plaintiff's favor. *See id.*

## III. Discussion

### A. Personal Jurisdiction

"'Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.' Because 'California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution,' our inquiry centers on whether exercising jurisdiction comports with due process." *Picot*, 780 F.3d at 1211 (internal citations omitted) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)); *see* Cal. Code Civ. Proc. § 410.10.

Federal due process permits a court to exercise personal jurisdiction over a nonresident defendant if that defendant has "at least 'minimum contacts' with the relevant forum

such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Those contacts may be so continuous and systematic as to render a defendant essentially at home in the forum state and amenable to any suit there. Alternatively, a court may exercise jurisdiction over "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The Supreme Court has referred to these different bases for personal jurisdiction as "general" and "specific" jurisdiction. *See, e.g.*, *id.*; *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1779–80 (2017)

Global does not contend that either Bachosa or the individual defendants have contacts so continuous and systematic as to render them essentially at home in California and thus amenable to general jurisdiction. We consider whether their contacts with the State of California in connection with this controversy are enough to allow the exercise of specific jurisdiction.

### 1. Specific Jurisdiction over Bachosa

We use a three-prong test for analyzing claims of specific jurisdiction. First, "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*,

817 F.2d 1416, 1421 (9th Cir. 1987)).  Second, the claim must arise out of or relate to the defendant's forum-related activities.  *Id.*  Finally, the exercise of jurisdiction must be reasonable.  *Id.*  The plaintiff must satisfy the first two prongs of this test.  "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

Under the first prong of the specific-jurisdiction inquiry, "purposeful availment" and "purposeful direction" are distinct concepts.  *Id.* at 802.  Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort.  *See id.*; *Picot*, 780 F.3d at 1212.  However, our cases do not impose a rigid dividing line between these two types of claims.  When both contract and tort claims are at issue, both tests are relevant.  *See Picot*, 780 F.3d at 1212.  At bottom, both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."  *Burger King*, 471 U.S. at 474–75 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–74 (1984)).

The Supreme Court's decision in *Burger King* guides our analysis in this case.  Burger King Corporation sued a Michigan franchisee in federal court in Florida—where Burger King had its principal place of business—for breach of the franchise agreement.  *Id.* at 466–68.  The defendant franchisee was a Michigan resident with no physical

connection to Florida. *Id.* at 479. Indeed, he had never been to Florida. Nonetheless, the Court held that because Burger King and the franchisee had agreed to an ongoing business relationship with foreseeable consequences in Florida, the franchisee was amenable to suit there. The franchise agreement was not an isolated or fleeting business contact. Instead, it was a contract that contemplated a long-term relationship between the parties and "continuing and wide-reaching contacts with Burger King in Florida." *Id.* at 480.

The Court rejected any sort of "mechanical test[]" based on "conceptualistic theories of the place or contracting or of performance." *Id.* at 478–79 (internal citations and quotation marks omitted). Whether performance was to be rendered in Michigan or in Florida was disputed in the case. *See id.* at 476; *id.* at 488 (Stevens, J., dissenting). Rather than looking to the place of performance, the Court looked to the business reality behind the particular contract at issue. The Court wrote, "[W]e have emphasized the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479 (internal citations and quotation marks omitted).

Following the lead of the Court in *Burger King*, we have emphasized that courts must evaluate the parties' entire course of dealing, not solely the particular contract or tortious

conduct giving rise to the claim, when assessing whether a defendant has minimum contacts with a forum. *See, e.g.*, *Picot*, 780 F.3d at 1212; *Sher*, 911 F.2d at 1363–64; *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207–08 (9th Cir. 2006) (en banc) (per curiam) (collecting cases). In cases where we have held that a contract between a forum resident and a non-resident did not give rise to specific jurisdiction in the forum, we have done so because the business relationship between the parties was fleeting or its center of gravity lay elsewhere. *See, e.g.*, *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) (holding that a single eBay sale to a California resident did not give rise to personal jurisdiction there); *Thomas P. Gonzales Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247 (9th Cir. 1980) (holding that a contract resulting from public bidding in Costa Rica did not give rise to personal jurisdiction in California).

Interpreting genuine factual disputes in Global's favor—as we must in this posture—we conclude that Global has made a prima facie showing that Bachosa "reach[ed] out beyond [Honduras]" to "create continuing relationships and obligations with citizens of [California]." *Burger King*, 471 U.S. at 473. Bachosa sustained a relationship with Global over several years and hundreds of contracts, purchasing millions of dollars of goods to be shipped from the United States. The goods Bachosa purchased were graded according to American standards, and inspection certificates were issued in California. Bachosa consistently made payments on the contracts to Global in California. When difficulties arose concerning the two contracts at issue here, Bachosa induced Global to continue doing business with it by acknowledging its ongoing obligations to make payments in

California.   The promise was made for the purpose of obtaining benefits from a California corporation.  Although *Burger King* does not require physical presence, Global further alleges that Bachosa's officers came to Global's office in California and while there made the promises central to this dispute.

The district court erred by considering the memorandum, note, and guaranty in isolation, ignoring the business reality in which they were embedded.  As just described, those agreements followed a lengthy and ongoing course of dealing.   They recognized a continuing obligation in connection with past sales on which Bachosa had allegedly failed to make payments.  Moreover, Global's claims here are not limited to breach of the memorandum, note, and guaranty. Global's complaint also included two claims in indebitatus assumpsit—"common counts," in the parlance of California pleading—alleging, independently of the agreements, that Bachosa had failed to pay for goods it had received.  Those claims related to the underlying commodities transactions, not to the subsequently executed memorandum, note, and guaranty.

In sum, Bachosa maintained numerous contacts with California during the course of its years-long business relationship with Global.  Those contacts gave rise to this dispute, and it was reasonable for Bachosa to expect that it would be haled into court in California to fulfill its obligations and to account for harm it foreseeably caused there.  We therefore hold that the district court had personal jurisdiction over Bachosa in this action.

2. Specific Jurisdiction over Andonie and Jarufe

Specific jurisdiction over Andonie and Jarufe presents a different question: when may a court exercise jurisdiction over individuals based on their contacts with a forum on behalf of a corporation? Andonie and Jarufe contend that a court may not consider such contacts at all. Instead, they argue, a court may consider only the actions they took in an individual capacity on their own behalf.

Our precedent rejects this limitation on personal jurisdiction over corporate officers. In *Davis v. Metro Prods., Inc.*, 885 F.2d 515 (9th Cir. 1989), employees of a corporation contended that their actions on behalf of the corporation could only subject them to jurisdiction in circumstances that would allow the court to pierce the corporate veil for purposes of liability. We held that constitutional due process imposed no such limitation. We noted that the Supreme Court had allowed the exercise of specific jurisdiction over employees based on actions they took on behalf of a corporation. *See id.* at 521; *see, e.g.*, *Calder v. Jones*, 465 U.S. 783, 790 (1984) ("their status as employees does not somehow insulate them from jurisdiction"); *Keeton*, 465 U.S. at 781 n.13. As a matter of Arizona law, we held that the state's long-arm statute allowed the exercise of personal jurisdiction to the limits of the federal Constitution, and therefore did not shield corporate officers from jurisdiction over their persons based on actions within the scope of their employment. *Davis*, 885 F.2d at 522.

California's long-arm statute, like Arizona's, imposes no limitations on personal jurisdiction beyond those required by

due process.  *See Picot*, 780 F.3d at 1211.  Andonie and Jarufe's actions on behalf on Bachosa, like the actions of the employees in *Davis*, *Calder*, and *Keeton*, may therefore give rise to personal jurisdiction over them as individuals.

Although their status as officers of Bachosa does not foreclose personal jurisdiction over Andonie and Jarufe, their status also does not guarantee it.  Personal jurisdiction over an individual who acts as an agent of a third party must be assessed on the individual's actions alone.  *See Sher*, 911 F.2d at 1366; *see also Keeton*, 465 U.S. at 781 n.13 ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him. . . .").  We do not impute a corporation's forum contacts to each of the corporation's employees.  Instead, we assess whether each individual had minimum contacts with the forum such that the exercise of jurisdiction over that individual would comport with traditional notions of fair play and substantial justice.  *Calder*, 465 U.S. at 790.

Two of our cases are illustrative.  In *Davis*, we held that two corporate officers had sufficient contacts with Arizona when they conducted meetings with clients in Arizona and ultimately entered into six agreements with Arizona residents on behalf of the corporation.  *See Davis*, 885 F.3d at 522–23. In *In re Boon Global Ltd.*, 923 F.3d 643 (9th Cir. 2019), on the other hand, we suggested that signing a single contract with a forum resident on behalf of a corporation would not subject a corporate officer to personal jurisdiction in a claim for breach of that contract.  However, with the limited factual record before us on a petition for writ of mandamus, we stopped short of holding in that case that the district court clearly erred in exercising jurisdiction.  *See id.* at 652.

Interpreting genuine factual disputes in Global's favor, Andonie and Jarufe had extensive contacts with California. Like the corporate officers in *Davis*, Andonie and Jarufe met with Global's employees in the forum state to negotiate the commodities transactions at issue in the suit. While in Global's office in California, Andonie and Jarufe falsely assured Global that Bachosa had extended its importation permits. Further, they had previously traveled to California on multiple occasions as part of the ongoing business relationship between Global and Bachosa. We hold that these contacts are sufficient to support the exercise of specific jurisdiction over Andonie and Jarufe.

The guaranty signed by Andonie and Jarufe may provide an independent basis for personal jurisdiction over the individual defendants. Global contends that in the guaranty Andonie and Jarufe assumed personal liability for the note. We have held that a corporate officer who personally guarantees a corporation's obligation "interject[s] himself into the transaction," subjecting the officer to personal jurisdiction on like terms as the corporation. *Forsythe v. Overmyer*, 576 F.2d 779, 783 (9th Cir. 1978).

Not all of our holding in *Forsythe* survived the Supreme Court's subsequent decisions in *Calder* and *Keeton*. Our statement in *Forsythe* that "a corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that forum," *Forsythe*, 576 F.2d at 783–84, is clearly irreconcilable with the Supreme Court's decisions subjecting corporate employees to suit in exactly those circumstances. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); *see also Davis*, 885 F.2d at 521 (rejecting the fiduciary

shield doctrine based on *Calder* and *Keeton*). However, our holding in *Forsythe* that a personal guaranty of a corporation's debt may give rise to personal jurisdiction over a corporate officer remains good law.

Global presented evidence that Andonie and Jarufe were key players in Bachosa's years-long business relationship with Global and that they personally assumed liability for Bachosa's obligations under the note. In these circumstances, they "could have reasonably foreseen that they would be haled into [California's] courts" if their actions caused harm there. *Davis*, 885 F.2d at 523. We therefore conclude that the district court had personal jurisdiction over them in this action.

Because we hold that the district court had personal jurisdiction over Andonie and Jarufe based on Global's claims in its initial complaint, we do not reach the question whether its proposed amendments to the complaint would cure any jurisdictional defect.

## B. *Forum Non Conveniens*

"We have discretion to reach *forum non conveniens* even if the district court declined to consider it." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015). It is proper to do so where "the record is sufficiently developed and the issue has been presented and argued to us." *Id.* (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1117 (9th Cir. 2002)). The parties briefed the issue at length and agreed during oral argument that we should reach it. In the interest of judicial economy, we exercise our discretion to do so.

We decide questions of *forum non conveniens* as a matter of federal law even in cases where state or foreign substantive law governs. *Ravelo Monegro v. Rosa*, 211 F.3d 509 (9th Cir. 2000). "To prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Ranza*, 793 F.3d at 1076 (quoting *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011)). "[F]orum non conveniens [i]s an exceptional tool to be employed sparingly . . . ." *Ravelo Monegro*, 211 F.3d at 514. To succeed, a defendant must make "a clear showing of facts which . . . establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience." *Id.* (alteration in original) (quoting *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983)).

We hold that the balance of private and public interest factors does not favor dismissal. Both sides identify witnesses for whom appearance in their home country would be more convenient. Most of the key documentary evidence, although originally in Spanish, has already been translated into English. The defendants contend that evidence related to Honduran importation permits and the demurrage charges incurred by the *Sacramento* would be more easily accessible in Honduras. However, evidence related to the negotiations in California would be more easily accessible in California. That some witnesses would prefer to appear in Honduras falls well short of a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience. *Ravelo Monegro*, 211 F.3d at 514. Moreover, Global submitted evidence of significant safety concerns with travel to Honduras,

particularly for those who travel to the country for the purpose of collecting debt owed by Honduran companies.

The defendants contend that the public interest factors favor dismissal because Honduran law would govern this dispute. They point to California Civil Code § 1646, which requires the terms of a contract "to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." In their view, the contracts for rice and corn did not indicate the place of performance. Therefore, in their view, the law of Honduras would apply, because that is where they contend they accepted the contracts.

We do not agree with the defendants' choice-of-law analysis. Section 1646 governs only the interpretation of contractual terms. Under California's choice-of-law rules, all other issues in a contract dispute, including the validity of a contract, are governed by governmental interest analysis. *See Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436 (Cal. Ct. App. 2007); *see, e.g.*, *Bernkrant v. Fowler*, 360 P.2d 906 (Cal. 1961) (en banc) (applying governmental interest analysis to determine which state's statute of frauds governed the validity of a contract). California law presumptively applies under the governmental interest approach unless there is a true conflict of governmental interests and the foreign jurisdiction's interests would be more severely impaired by the application of California law. *See S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746 (9th Cir. 1981); *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914 (Cal. 2006). Thus, California law will likely

govern key issues in this dispute, including the validity and enforceability of the memorandum, note, and guaranty.

A plaintiff's choice of forum—particularly a plaintiff's "home forum"—is entitled to considerable deference. *Ranza*, 793 F.3d at 1076 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)); *see also Ravelo Monegro*, 211 F.3d at 512 (noting that dismissal for *forum non conveniens* is typically only appropriate where a plaintiff chooses a forum wholly unrelated to the dispute). This case presents no more than the ordinary burdens any foreign defendant will bear when called to defend an action in the United States against a domestic plaintiff. Those burdens are insufficient to overcome the presumption in favor of Global's choice of its home forum.

## Conclusion

We reverse the district court's order dismissing the action for lack of personal jurisdiction, vacate its orders on the parties' remaining motions, and remand with instructions to deny the *forum non conveniens* motion on the merits.

**REVERSED in part, VACATED in part, and REMANDED.**