**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LNS ENTERPRISES LLC, a limited liability company; SONOMA ORAL AND FACIAL SURGERY PLLC, a professional limited liability company; PETER SPANGANBERG; LYNN SPANGANBERG,

     *Plaintiffs-Appellants*,

  v.

CONTINENTAL MOTORS, INC., a Delaware corporation; TEXTRON AVIATION, INC., a Kansas corporation,

     *Defendants-Appellees*,

  and

COLUMBIA AIRCRAFT MANUFACTURING CORPORATION; CESSNA AIRCRAFT COMPANY; CHANDLER AVIATION SERVICES, INC.; VAN BORTEL AIRCRAFT, INC.; SKYLANCER AVIATION LLC; LONE MOUNTAIN AVIATION, INC.; FALCON EXECUTIVE AVIATION, INC.; PROFESSIONAL AIR; UNKNOWN PARTIES,

     *Defendants*.

No. 20-16897

D.C. No.
2:19-cv-05221-SMB

OPINION

Appeal from the United States District Court
for the District of Arizona
Susan M. Brnovich, District Judge, Presiding

Argued and Submitted November 18, 2021
Phoenix, Arizona

Filed January 12, 2022

Before:  Ronald Lee Gilman,[*] Consuelo M. Callahan, and
Daniel A. Bress, Circuit Judges.

Opinion by Judge Gilman

---

## SUMMARY[**]

### Personal Jurisdiction

The panel affirmed the district court's decision to dismiss a civil action arising from a nonfatal airplane crash for lack of personal jurisdiction and to deny plaintiffs' request for jurisdictional discovery.

Plaintiffs conceded that the Arizona district court lacked general jurisdiction over two defendants, Continental Motors, Inc., and Textron Aviation, Inc.  Citing *Ford Motor*

---

[*] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

*Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021), the panel held that plaintiffs also failed to establish a prima facie case of specific jurisdiction over either defendant because they did not demonstrate that defendants had sufficient minimum contacts with Arizona that were related to plaintiffs' claims.

The panel also held that the district court properly denied plaintiffs' request for jurisdictional discovery with regard to defendants' contacts with Arizona because the request amounted to nothing more than a hunch that discovery might reveal facts relevant to the jurisdictional analysis.

## COUNSEL

Brian J. Lawler (argued), Pilot Law P.C., San Diego, California; Robert K. Lewis, Amy M. Lewis, and Christopher A. Treadway, Lewis & Lewis Trial Lawyers, Phoenix, Arizona; for Plaintiffs-Appellants.

Laurie A. Salita (argued), Malvern, Pennsylvania; Will S. Skinner, Woodland Hills, California; for Defendant-Appellee Continental Motors, Inc.

Tracy H. Fowler (argued), Snell & Wilmer LLP, Salt Lake City, Utah; Rachael Peters Pugel, Snell & Wilmer LLP, Phoenix, Arizona; for Defendant-Appellee Textron Aviation, Inc.

**OPINION**

GILMAN, Circuit Judge:

This appeal involves claims against Defendants Continental Motors, Inc. (Continental) and Textron Aviation, Inc. (Textron) arising from a nonfatal airplane crash. Plaintiffs—the pilot, his wife, and two companies controlled by the couple—challenge the district court's decision to grant Continental's and Textron's motions to dismiss for lack of personal jurisdiction and to deny Plaintiffs' request for jurisdictional discovery.

At this point in the litigation, Plaintiffs have conceded that Arizona does not have general jurisdiction over either Defendant. Plaintiffs have also failed to establish a prima facie case of specific jurisdiction over either Defendant because Plaintiffs have not demonstrated that Defendants had sufficient minimum contacts with Arizona that are related to Plaintiffs' claims. And Plaintiffs' reasons for seeking jurisdictional discovery with regard to Defendants' contacts with Arizona were properly deemed insufficient because the request amounted to nothing more than a hunch that discovery might reveal facts relevant to the jurisdictional analysis. We therefore AFFIRM the district court's decision to dismiss this case for lack of personal jurisdiction and to deny the request for jurisdictional discovery.

## I.  BACKGROUND

Plaintiffs purchased what they describe as a "2006 Cessna Columbia" aircraft in 2016, equipped with a Continental engine, from an unidentified individual. The aircraft was used by Plaintiffs to fly within Arizona for work. On July 31, 2017, Sonoma Oral and Facial Surgery's

principal, Peter Spanganberg, was flying the plane when he was forced to make an emergency crash landing during the flight. As a result of the emergency landing, the aircraft suffered significant structural damage and the complete loss of its engine, but fortunately no one was killed in the crash.

Plaintiffs allege that various actors were involved in the manufacture and maintenance of the aircraft. The actors relevant to this appeal are Continental and Textron. Continental manufactured an engine in 2006 and shipped it to Columbia Aircraft Manufacturing Corporation (Columbia) in Oregon, where it was installed on the aircraft in question. Also in 2006, Cessna Aircraft Company (Cessna) acquired certain assets from Columbia, which was the original manufacturer of the Plaintiffs' aircraft. Cessna did not assume Continental's liabilities apart from the express, written aircraft warranties still in effect at the time of acquisition. In 2014, Cessna became a subsidiary of Textron, and Cessna was fully merged into Textron in 2017.

Plaintiffs filed the operative complaint in the Superior Court of the State of Arizona for Maricopa County on July 30, 2019. Their claims included negligence, negligence per se, strict products liability, and breach of warranty against 15 defendants. In the complaint, Plaintiffs alleged that Continental designed, manufactured, and distributed the engine, and that Continental was responsible for all parts and components of the engine and for all recalls and repair orders related thereto. Plaintiffs also alleged that Textron is the parent company or holding company for Cessna Aircraft Company, and that Cessna was engaged in the design, manufacture, distribution, and testing of the aircraft. But neither the aircraft nor its engine were manufactured, sold, or serviced in Arizona by either Defendant.

The case was removed to the United States District Court for the District of Arizona on September 19, 2019. Four of the 15 original defendants—including Continental and Textron—moved to dismiss the complaint for lack of personal jurisdiction. In connection with their motions to dismiss, Continental attached a declaration and Textron attached an affidavit from their respective corporate officers identifying their connections (or lack thereof) to Arizona. Plaintiffs opposed the motions and requested jurisdictional discovery as to Defendants if the court found that there was no personal jurisdiction.

In June 2020, the district court granted the motions to dismiss for lack of personal jurisdiction because Plaintiffs had failed to show "that any of the moving Defendants are meaningfully connected to Arizona in such a way that renders them subject to this Court's exercise of personal jurisdiction." It also denied Plaintiffs' request for jurisdictional discovery "because Defendants ha[d] already specifically rebutted Plaintiffs' unsupported jurisdictional allegations and arguments," and Plaintiffs had requested discovery "without providing any affidavit or evidence substantiating their requests or describing with any precision how such discovery would be helpful to the Court." The court concluded that the request was "akin to hunches that personal jurisdiction might exist."

Plaintiffs initially appealed the orders relating to all four of the defendants that had filed motions to dismiss, but ultimately stipulated to the dismissal of the appeals as to those other than Continental and Textron. We therefore limit our consideration to these two remaining Defendants.

## II.  ANALYSIS

### A.  Standards of review

We review a dismissal for lack of personal jurisdiction de novo.  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  A district court's decision to deny jurisdictional discovery, in contrast, is reviewed under the abuse-of-discretion standard.  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977).

### B.  The jurisdictional facts before this court

In reviewing a district court's decision on a motion to dismiss for lack of personal jurisdiction, "we take as true all uncontroverted allegations in the complaint and resolve all genuine disputes in the plaintiff's favor."  *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020).  But we cannot "assume the truth of allegations in a pleading which are contradicted by affidavit."  *Data Disc*, 557 F.2d at 1284.  If both sides submit affidavits, then "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor."  *Boschetto*, 539 F.3d at 1015 (citation omitted).  Declarations and affidavits are functional equivalents in this context.  *See* 28 U.S.C. § 1746.

The record before us is not comprised solely of Plaintiffs' complaint.  Rather, Continental attached a declaration to its motion to dismiss, and Textron attached an affidavit to its motion to dismiss.  The declaration and the affidavit contravene allegations Plaintiffs made in the complaint.  If Plaintiffs had filed affidavits or declarations in response, the district court and this court would have been obligated to resolve conflicting statements in Plaintiffs' favor.  *See Schwarzenegger v. Fred Martin Motor Co.*,

374 F.3d 797, 800 (9th Cir. 2004). But Plaintiffs filed no affidavits or declarations in response. The relevant uncontroverted record, therefore, includes Defendants' rebuttals to Plaintiffs' allegations.

## C. The current landscape of personal jurisdiction caselaw

Bearing in mind the factual record that the parties have established, we now turn to the primary question before us: whether Arizona has specific jurisdiction over Continental and Textron. Our analysis of this issue has been aided by the Supreme Court's recent decision in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), which is discussed in detail below.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). Arizona exerts "personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution." *A Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995). The Due Process Clause limits a state's power to exercise control over a nonresident defendant. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). To protect a defendant's liberty, due process necessitates that a nonresident defendant have "certain minimum contacts" with a forum state before that state can exercise personal jurisdiction over that individual or entity. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The forum state can exercise personal jurisdiction if the defendant has sufficient contacts with the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe*, 326 U.S. at 316).

There are two types of jurisdiction—general and specific. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Each depends on the quantity and quality of contacts that the defendant has with the state. A court has general jurisdiction over a defendant only when the defendant's contacts with the forum state are so "continuous and systematic as to render [them] essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (citation and internal quotation marks omitted). Claims based on general jurisdiction "need not relate to the forum State or to the defendant's activity there; they may concern events and conduct anywhere in the world." *Ford*, 141 S. Ct. at 1024. Plaintiffs have conceded that the district court here had no general jurisdiction over Continental (a Delaware corporation with its principal place of business in Alabama) or Textron (a Kansas corporation with its principal place of business in Kansas), so we need engage only in a specific-jurisdiction analysis.

In contrast to general jurisdiction, specific jurisdiction covers defendants that are less intimately connected with a state, but that have sufficient minimum contacts with the state that are relevant to the lawsuit. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). This court uses the following three-part test to analyze "whether a party's 'minimum contacts' meet the due process standard for the exercise of specific personal jurisdiction":

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and

> protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741–42 (9th Cir. 2013) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). If the plaintiff establishes the first two prongs, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068–69 (9th Cir. 2017) (internal quotation marks omitted) (quoting *Schwarzenegger*, 374 F.3d at 802).

All three prongs must be satisfied to assert personal jurisdiction, but the first two prongs have a unique relationship to one another. "[T]his court has stated that in its consideration of the first two prongs, '[a] strong showing on one axis will permit a lesser showing on the other.'" *In re W. States Wholesale Nat'l Gas Antitrust Litig.*, 715 F.3d at 742 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc) (alteration in original)). Because of this unique relationship, we provide a more thorough discussion of these two prongs below.

### 1. The first prong of specific jurisdiction: the defendant must purposefully avail itself of the forum state

Regarding the first prong, a defendant's availment must be purposeful, "not random, isolated, or fortuitous." *Ford*, 141 S. Ct. at 1025 (quoting *Keeton v. Hustler Magazine, Inc.*,

465 U.S. 770, 774 (1984) (internal quotation marks omitted)).  "In order for a court to have specific jurisdiction over a defendant, 'the defendant's suit-related conduct must create a substantial connection with the forum State.'" *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017) (quoting *Walden*, 572 U.S. at 284).  Placing "a product into the stream of commerce"—even if the defendant is aware "that the stream of commerce may or will sweep the product into the forum state"—"does not convert the mere act of placing the product into the stream of commerce into an act" of purposeful availment.  *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007).  Supreme Court jurisprudence instead "requires 'something more' than the mere placement of a product into a stream of commerce."  *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 111 (1987)).

Two cases help illustrate the range of what constitutes "something more."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), sits at one end of the range and represents a case completely lacking the "something more" that would have allowed the forum state to assert personal jurisdiction over two of the defendants.  In *World-Wide Volkswagen*, the plaintiffs purchased a new Audi from Seaway Volkswagen, a car dealer in New York.  The plaintiffs then moved from New York to Arizona.  While driving through Oklahoma on their way to Arizona, another car hit the plaintiffs' Audi, and the Audi caught on fire.  The plaintiffs sued multiple parties, including Volkswagen's regional distributor—World-Wide Volkswagen Corp. (World-Wide)—and the retail dealer that sold the plaintiffs the vehicle—Seaway.  These two defendants filed motions to dismiss for a lack of personal jurisdiction.

The Supreme Court noted that World-Wide was incorporated and had its offices in New York, and that it distributed vehicles and products to retail dealers in New York, New Jersey, and Connecticut. *Id.* at 288–89. Similarly, the Court noted that Seaway was incorporated in New York and had its principal place of business there. *Id.* at 289. The Court stated that both defendants were "fully independent corporations whose relations with each other and with Volkswagen and Audi [were] contractual only." *Id.* at 289. World-Wide and Seaway "carr[ied] on no activity whatsoever in Oklahoma." *Id.* at 295. They also did not solicit business "through salespersons or through advertising reasonably calculated to reach the State." *Id.* The Court found "a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction," thereby declining to subject World-Wide and Seaway to Oklahoma's jurisdiction due to the entities' lack of contacts with the state. *Id.* at 295.

At the opposite end of the range is *Ford Motor Co. v. Montana Eighth Judicial District*, 141 S. Ct. 1017 (2021), presenting a case that involved "a veritable truckload of contacts" between Ford Motor Company and the forum states such that Ford conceded purposeful availment. *Id*. at 1031. In *Ford*, the Court considered the cases of two plaintiffs concerning two different car accidents. One case involved a plaintiff who was driving a Ford Explorer near her home in Montana when she got into an accident. *Id.* at 1023. The other case involved a plaintiff who was a passenger in his friend's Ford Crown Victoria when he got into an accident in Minnesota. *Id.*

Ford conceded that it had purposefully availed itself of doing business in the forum states because "[b]y every means imaginable—among them, billboards, TV and radio

spots, print ads, and direct mail—Ford urges Montanans and Minnesotans to buy its vehicles, including . . . Explorers and Crown Victorias." *Id.* at 1028. The Court further noted that Ford's contacts with Montana and Minnesota extended well beyond its targeted advertising. It pointed out that "Ford cars—again including those two models—are available for sale, whether new or used, throughout the States, at 36 dealerships in Montana and 84 in Minnesota"; that Ford dealers in the two states "regularly maintain and repair Ford cars"; and that Ford "distributes replacement parts to both its own dealers and to independent auto shops in the two States." *Id.*

To be sure, a defendant need not have Ford's staggering number of contacts with a state to have satisfied the requirement that it purposefully availed itself of the privilege of conducting activities within the forum state. The Supreme Court provided additional examples of "something more" in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987), which included "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id*. at 112.

## 2. The second prong of specific personal jurisdiction: the claim arises out of or relates to the defendant's forum-related activities

The second prong of the personal-jurisdiction analysis mandates that the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Ford*, 141 S. Ct. at 1025 (citation and internal quotation marks omitted). Because Ford had conceded that it had purposefully availed itself of the privilege of doing business in the forum state,

the case turned on whether the second prong was also satisfied. Ford argued that the second prong mandates that "jurisdiction attaches only if the defendant's forum conduct *gave rise* to the plaintiff's claims." *Id.* at 1026 (internal quotation marks omitted) (emphasis in original). The Court rejected this formulation of the analysis. It explained that the phrase "arise out of" indicates a causal link, but that "the back half, after the 'or'"—and in particular, the phrase "relates to"—"contemplates that some relationships will support jurisdiction without a causal showing." *Id.*

The Supreme Court cautioned, however, that this "does not mean anything goes." *Id.* The phrase "relate to" still "incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* By way of example, the Court emphasized that, in *World-Wide Volkswagen*, it had "contrasted [Seaway's] position to that of two other defendants—Audi, the car's manufacturer, and Volkswagen, the car's nationwide importer"—because "Audi['s] and Volkswagen's business deliberately extended into Oklahoma," such that "Oklahoma's courts could hold the companies accountable for a car's catching fire there—even though the vehicle had been designed and made overseas and sold in New York." *Id.* at 1027. A corporation deliberately extends its business into a forum when it has "continuously and deliberately exploited [a State's] market" for the corporation's products. *Id.* (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 771 (1984)). Such a deliberate extension to the Oklahoma market put Audi and Volkswagen on "clear notice of its exposure in that State to suits arising from local accidents involving its cars." *Id.* (internal quotation marks omitted).

The Supreme Court went on to apply this logic to Ford. It emphasized that the litigation was related to Ford's

contacts with Montana and Minnesota so as to subject Ford to jurisdiction in those states because "Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States." *Id.* at 1028.

## D. Plaintiffs failed to establish personal jurisdiction over Continental and Textron

We now apply the personal-jurisdiction caselaw to the case before us. "If the court determines that it will receive only affidavits"—as it did here—a plaintiff bears the burden of making "only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Data Disc v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Plaintiffs failed to meet their burden to establish that Continental has sufficient minimum contacts with Arizona to subject it to jurisdiction in the forum. And although the record shows that Textron has some contact with Arizona, Plaintiffs failed to establish that their claim arises out of or relates to that contact.

### 1. *Plaintiffs failed to establish that Continental has sufficient minimum contacts with Arizona to subject it to jurisdiction in the forum*

We first examine the record as it pertains to the contacts between Continental and Arizona. Many of the allegations in the complaint pertain to Continental's nationwide contacts rather than Continental's contacts with Arizona specifically. For instance, the complaint alleges that "[a]t all times relevant herein, Continental Motors Group Limited, was engaged in the design, manufacture, and distribution and testing of aircraft engines include[ing] the engine used on the subject aircraft." It also alleges that Continental issued a

critical service bulletin, "which included the repair/replacement of the oil cooler cross fitting . . . [, and] states that Continental is aware of some occurrences where a loss of engine oil resulted from a fractured nipple fitting between the cross fitting and oil cooler."

These allegations are clearly insufficient to render Continental subject to personal jurisdiction in Arizona because they do not demonstrate that Continental purposefully availed itself of the privilege of doing business in Arizona. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011) (reversing the Supreme Court of New Jersey's decision that "concluded that a British manufacturer of scrap metal machines was subject to jurisdiction in New Jersey, even though at no time had it advertised in, sent goods to, or in any relevant sense targeted the State").

In their appellate briefing, Plaintiffs attempt to provide a more specific connection between Defendants and Arizona by alleging that Defendants "advertise their products, services, and after-market parts and accessories to owners, operators, enthusiasts, service and maintenance repair shops and Fixed-Base Operators ('FBO') in Arizona." But this allegation fails to establish jurisdiction for two reasons: First, it is not properly before us because the allegation is not among "the original papers and exhibits filed in the district court" or in "the transcript of proceedings." *See* Fed. R. App. P. 10(a). Second, even if the allegation were properly before us, Continental's declaration directly refutes Plaintiffs' contention by stating that Continental has "not create[d] a marketing strategy for the Subject Engine in the State of Arizona or directed specifically to Arizona residents." We cannot, for the reasons explained above, "assume the truth of allegations in a pleading which are

contradicted by affidavit." *Data Disc, Inc.*, 557 F.2d at 1285.

Plaintiffs also argue that Continental is subject to personal jurisdiction in Arizona because Continental's website lists four official repair and installation shops located in Arizona. Although Plaintiffs failed to make this allegation in their complaint, we will consider the point because the district court directly addressed the argument in its opinion. *See* Fed. R. App. P. 10(a).

The district court concluded that "Plaintiff's [] assertion, that [Continental's] website describing its Arizona shops creates personal jurisdiction, . . . is . . . unappealing" because a "universally accessible website where anyone can access information about its service centers does not show it purposefully availed itself here." We agree that the mere existence of a "passive website" maintained by Continental is insufficient to render the company subject to personal jurisdiction in the absence of other contacts. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006). But—in the context of this appeal, at least—Plaintiffs' argument appears to be that Continental's operation of repair shops in Arizona supplies the necessary minimum contacts with the forum here, not merely Continental's maintenance of a website.

This argument fails for two reasons. First, the record establishes that Continental is not authorized to do business in Arizona, has no offices or employees in Arizona, and owns no property in the state. This part of the record corroborates a contention that Continental makes in its appellate brief: that these repair shops are "third-party mechanics" that are "unaffiliated" with Continental. The Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), is instructive on this

point. One of the plaintiffs' arguments in that case was that Bristol-Myers had contracted with a California company to distribute the drug in question. *Id.* at 1783. The Court concluded that this argument was insufficient to render Bristol-Myers subject to jurisdiction in California because a defendant's "relationship with a . . . third party, standing alone[,] is an insufficient basis for jurisdiction." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). Plaintiffs in the present case have failed to establish anything more than a third-party relationship between Continental and the four service centers.

Second, even assuming that Plaintiffs could establish that Continental did operate those repair centers, plaintiffs have not established that their injuries in this case arise out of or relate to Continental's contacts with the forum. Plaintiffs do not allege that any of these repair shops worked on the engine in Plaintiffs' aircraft or the type of engine at issue in this case. The existence of these four repair shops, without more, is insufficient to show that Continental "continuously and deliberately exploited" Arizona's market with respect to the specific type of engine at issue. *See Ford*, 141 S. Ct. at 1027 (quoting *Keeton*, 465 U.S. at 771). In *Ford*, Ford not only had dozens of dealerships that performed maintenance on the types of vehicles at issue in the suits, but Ford also extensively marketed and sold those types of vehicles in the forum states. There is no indication that Continental advertised, sold, or serviced the type of Continental engine at issue here in Arizona, much less to the extreme degree that Ford advertised, sold, and serviced its vehicles in Montana and Minnesota. *See id.* at 1028. Given that there are no material contacts that Plaintiffs have put into the record, Continental's alleged contacts with Arizona are inadequate to render Continental subject to jurisdiction in Arizona.

## 2. Plaintiffs have failed to establish that their claim arises out of or relates to Textron's contact with Arizona

We now turn to the record as it pertains to the one contact between Arizona and Textron. Textron did not itself manufacture, design, or service the plaintiffs' aircraft in Arizona (or anywhere), thus making clear that plaintiffs' claim does not "arise out of" any Textron contacts in Arizona. In its affidavit, Textron did acknowledge that it maintains a single service center in Arizona. But this contact is insufficient to render Textron subject to jurisdiction in Arizona because, even if we were to assume that Textron purposefully availed itself of the privilege of doing business in Arizona, the record does not establish that the instant litigation "relate[s] to" this contact, for two independent reasons. *See Ford*, 141 S. Ct. at 1025.

First, based on extensive marketing and distribution, "Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States," *id.*, whereas Textron's contacts with Arizona with respect to the model of Columbia aircraft at issue are in no sense comparable. There is no allegation in this case that Textron's single Arizona service center ever serviced Plaintiffs' aircraft, nor is there any indication that this service center even services the same type of Columbia aircraft at issue in this case. The Supreme Court repeatedly emphasized in *Ford* that Ford had advertised, sold, and maintained the precise vehicles at issue in the case—the Ford Crown Victoria and Ford Explorer—in the relevant jurisdictions. *Id*. at 1028. The Court explicitly noted that it was cabining *Ford* only to those circumstances in which the same model of the product at issue was "advertised, sold, and

serviced" by the defendant. *Id.* (noting that the opinion did not address a case in which Ford marketed these particular models "in only a different State or region.").

Second, even if the service center serviced the type of aircraft at issue, the record establishes that Textron is unrelated to Columbia (the company that designed, manufactured, and sold Plaintiffs' aircraft). Textron's only connection to Columbia is through Cessna, which acquired some of Columbia's assets in 2007 and itself became a subsidiary of Textron in 2014. Textron had no "fair warning" that it could be hauled into court in Arizona because of its potential capacity to service certain types of Columbia planes with which it had no other connection. *Id.* It further points out that Cessna assumed only specific Columbia liabilities based on certain express written aircraft warranties, and Plaintiffs do not argue that their claims fall within these warranties. Indeed, Plaintiffs' counsel at oral argument acknowledged that, under the record as it now stands, Plaintiffs have not demonstrated sufficient contacts as to Textron so as to establish personal jurisdiction under *Ford*.

## E. The district court did not abuse its discretion in denying Plaintiffs' request for jurisdictional discovery

Finally, we turn to the district court's denial of Plaintiffs' discovery request. Jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (citation and internal quotation marks omitted). But a mere "hunch that [discovery] might yield jurisdictionally relevant facts," *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir.

2008), or "bare allegations in the face of specific denials," *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citation omitted), are insufficient reasons for a court to grant jurisdictional discovery.

Plaintiffs' reasons for requesting jurisdictional discovery were very broad and encompassed Plaintiffs' "belie[f] . . . that [Defendants] ha[ve] substantial contacts in Arizona." The district court specifically requested during oral argument that Plaintiffs identify what they thought they could achieve through jurisdictional discovery.

Counsel for Plaintiffs responded by explaining the importance of "look[ing] into whether there are more contacts with Arizona than provided for in the affidavits." Plaintiffs' counsel went on to state "I think it's going to be much more informative for both the parties and the Court if that discovery is allowed" because, although neither the aircraft nor the engine were manufactured or sold in Arizona, these facts do not "mean that those defendants don't sell other aircraft and other engines and other deicing systems in Arizona, and also maintain those products in the state of Arizona."

The district court denied Plaintiffs' request for jurisdictional discovery because "Defendants have already specifically rebutted Plaintiffs' unsupported jurisdictional allegations and arguments." It noted that Plaintiffs sought jurisdictional discovery "without providing any affidavit or evidence substantiating their requests or describing with any precision how such discovery could be helpful to the Court."

On appeal, Plaintiffs emphasize that they need jurisdictional discovery so that they can "confirm the extent of Respondents' sales, advertisements, and affiliations with service and installation shops in the forum state" through

depositions of the affiants who provided the affidavits. But given the preceding analysis, we conclude that Plaintiffs' request for discovery amounts to a mere "hunch that [discovery] might yield jurisdictionally relevant facts." *Boschetto*, 539 F.3d at 1020. Plaintiffs have not provided any information to support a contrary conclusion.

Nor are we persuaded by the Plaintiffs' citation to a recent decision from a North Carolina court finding personal jurisdiction over Continental in North Carolina. *See Cohen v. Continental Motors, Inc.*, 864 S.E.2d 816 (N.C. Ct. App. 2021). *Cohen* involved facts far more connected to the forum state; specifically, a Continental distributor that sold a Continental part in North Carolina, where it was installed in decedents' plane in North Carolina by a third-party Continental "subscriber" service center, that paid Continental a subscription fee for Continental publications and used those publications in connection with servicing decedents' aircraft. *Id.* at 818–20, 826–27. Plaintiffs have not identified any comparable connections to Arizona here that would cause us to conclude that the district court abused its discretion in not allowing additional discovery.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.